UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN PUBLIC HEALTH ASSOCIATION, et al.,<br><br>                              *Plaintiffs*,<br><br>v.<br><br>NATIONAL INSTITUTES OF HEALTH, et al.,<br><br>                              *Defendants*. | Case No. 1:25-cv-10787-BEM<br>Expedited Briefing Requested |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE
ORDER REGARDING CERTAIN ORGANIZATIONAL DECLARANTS**

Certain Organizational Declarants[1] have a reasonable fear of retaliation in future interactions with National Insitutes of Health (NIH) and United States Department of Health and Human Services (HHS) based on the fact of their participation in this lawsuit through actions including, but not limited to, the submission of declarations in support of Plaintiffs' Motion for Preliminary Injunction. The Proposed Protective Order, attached to the Motion for Protective Order as Exhibit A, is narrowly targeted to one purpose. Specifically, Plaintiffs request the Court enter an order of protection so that these nonparties can be assured that their participation in this litigation cannot "be considered in granting, denying, or otherwise reviewing any pending or future

---

[1] The Certain Organizational Declarants are: APHA Member 1; APHA Member 2; APHA Member 7; UAW Member 3; UAW Member 9; UAW Member 10; UAW Member 13; UAW Pre-Member 1; UAW Pre-Member 7. The set of Certain Organizational Declarants who sought relief under the Motion to Seal and who are seeking protection under this Motion for Protective Order are the same. *See* ECF No. 33 at 1 n.1.

application for NIH/HHS funding, any appeal of a termination of funding, or any funding previously approved by NIH/HHS." Exhibit A ¶ 2. Because there is good cause, the Court should enter a protective order to protect the names and Other Identifying Information[2] of Certain Organizational Declarants from disclosure to Defendants beyond what is necessary for litigation, and to prevent the fact of their participation in this litigation from being used for any potentially retaliatory purpose.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1) provides that a court may "for good cause, issue an order to protect a party or a person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Courts have "broad discretion to decide when a protective order is appropriate and what degree of protection is required." *ClearOne Commc'ns, Inc. v. Chiang*, 276 F.R.D. 402, 404 (D. Mass. 2011) (internal quotation marks and citation omitted). Plaintiffs bear the burden of proving "good cause" by demonstrating a factual basis concerning the risk of potential harm. Fed. R. Civ. P. 26(c)(1); *ClearOne Commc'ns, Inc.*, 276 F.R.D. at 403.

---

[2] As defined in the Protective Order, "Other Identifying Information" means information other than the Certain Organizational Declarants' names which "considered individually or collectively, . . . identifies any Certain Organizational Declarant directly or indirectly . . . and may include but not be limited to names of institutions employing, sponsoring or otherwise affiliated with Certain Organizational Declarants; current or former institutional position titles; grant award numbers; project names or other information about the subject matter of the Certain Organizational Declarants' research that is sufficiently unique so as to be identifying; grant project or budget start and end dates; grant award amounts; and any other potentially identifying information." Exhibit A ¶ 1.

## ARGUMENT

The Protective Order is needed to ensure disclosure of Certain Organizational Declarants'
identities is limited to avoid retaliatory harm. Through the Protective Order Plaintiffs seek to (i)
limit access to names and Other Identifying Information associated with Certain Organizational
Declarants to only those individuls "necessary to litigate this action," and (ii) ensure that any
person who learns the identity of a Certain Organizational Declarant through this litigation cannot
use the fact of their participation in this litigation for retaliatory purposes.

Certain Organizational Declarants have concerns about the serious risk of reputational
harm and retaliation from NIH if their identities are made known to individuals within the Trump
Administration, HHS, and NIH without the proposed Protective Order in place. The Certain
Organizational Declarants from UAW early career scientists. *See* Ex. 25, Sweeney Decl. ¶ 16.[3]
They expect to rely on NIH for future funding that is critical for sustaining ongoing research as
well as career development, and reasonably fear they will be blacklisted for future funding
opportunities if they participate in this lawsuit. *See id.*; *see also* Ex. 26, Berg Decl. ¶¶ 46-50. For
example, UAW Pre-Member 1 declares:

> I also worry that I will be blacklisted from future federal funding opportunities, in
> particular from the NIH. NIH funding is absolutely essential to my career – the
> expectations for achieving tenure in academia are generally to have at least one
> active major NIH grant. If I cannot get tenure, I will lose my job as a professor.
> Additionally, collaborations are a major part of scientific research, including
> collaborating as co-investigators on grants. If I develop a reputation as being
> potentially blacklisted by the NIH, potential collaborators will view me as a risk
> and be less likely to work with me on scientific projects and grant applications. This
> will limit the scientific work I am able to complete in my career.

---

[3] Citations are to numbered exhibits attached to the Declaration of Attorney Jessie J. Rossman filed
in support of Plaintiffs' Motion for Preliminary Injunction.

Ex. 35, UAW Pre-Member 1 Decl. ⁋ 25. The Certain Organizational Declarants from APHA

articulate comparable fears. For example, APHA Member 1 declares:

> I am also concerned about potential retaliation from the U.S. government. It is unclear why my grant was the first—and for a time, the only—scientific study (R01 grant) terminated under the "DEI" category, especially given the existence of many other federal research grants addressing discrimination and health. The timing of my termination, which occurred immediately after the NIH received authorization on the afternoon of February 28 to begin issuing such terminations, further compounds my concern.

Ex. 28, APHA Member 1 Decl. ¶ 32. As demonstrated in their sworn declarations, each Certain

Organizational Declarant has expressed similar concerns.[4] Many also have fears about that their

---

[4] *See, e.g.*, Ex. 29, APHA Member 2 Decl. ¶ 38 ("I am also worried that involvement in this case may jeopardize future NIH funding opportunities."); Ex. 32, APHA Member 7 Decl. ¶ 25 ("[G]iven the current poliical client, I am worried that my involvement in this case may make me a target. I am also concerned that my involvement in this case may result in me getting blacklisted by NIH. In addition to future funding opportunities, I have other NIH grants that I fear might get cancelled for no other reason than my participation in this lawsuit. This could potentially put my entire career at risk."); Ex. 37, UAW Member 3 Decl. ¶ 30 ("If the federal government decides to blacklist me from future federal funding, it would be extremely difficult to prove in the future. The current phase of my career is extremely time sensitive, so even short delays in funding, if NIH were to withhold funding due to my participation in this lawsuit, could cut me off from my salary and thus result in me having to leave my academic career."); Ex. 38, UAW Member 9 Decl. ¶ 17 ("In particular, I am worried that providing this declaration could hurt my ability to obtain federal funding in the future, including new NIH funding that I may seek to obtain later this year."); Ex. 39, UAW Member 10 Decl. ⁋ 21 ("I also fear that participating publicly could jeopardize my future eligibility for federal research funding. As an early-career scientist, access to such funding is essential to my long-term academic and research goals. Losing these opportunities would significantly disrupt my career trajectory." ); Ex. 42, UAW Member 13 Decl. ¶ 16 (expressing concern regarding repercussions of participation in lawsuit); Ex. 36, UAW Pre-Member 7 Decl. ¶19 ("I am worried about long term impacts on my career, both with the potential of being blacklisted from other funding opportunities and for the potential of making it more difficult to secure a faculty position.").

involvement in this litigation could be used to retaliate against their institutions, mentors, or others associated with them.[5]

Certain Organizational Declarants fears that their participation in this litigation could result in retaliatory actions by NIH or HHS are neither unfounded, nor unreasonable. The Administration has already issued an executive order against unions based on accusations that they have "declared war on President Trump's agenda."[6] The Trump Administration has also issued executive orders and taken other actions that appear to punish and oppress individuals and organizations that stand up to the Administration through participation in litigation with which the Administration disagrees. These include executive orders issued against law firms which have provided legal counsel to political rivals[7] and which have provided pro bono litigation work for civil rights and voter protection efforts.[8] And just last week, President Trump suggested revoking Harvard University's status as a 501(c)(3) organization after the University sued the Administration in court.[9] Such actions by the Administration support Certain Organizational Declarants' reasonable

---

[5] *See, e.g.*, Ex. 23, APHA Benjamin Decl. ¶ 49; Ex. 32, APHA Member 7 Decl. ¶ 25; Ex. 36, UAW Pre-Member 7 Decl. ¶ 19; Ex. 37, UAW Member 3 Decl. ¶ 31; Ex. 42, UAW Member 13 Decl. ¶ 16.

[6] *Fact Sheet: President Donal J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements*, Fact Sheets, March 27, 2025 (Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements – The White House).

[7] *Addressing Risks from Perkins Coie LLP*, Executive Order, March 6, 2025 (Addressing Risks from Perkins Coie LLP – The White House).

[8] *Addressing Risks from WilmerHale*, Executive Order, March 27, 2025 (Addressing Risks From WilmerHale – The White House).

[9] Julia Mueller, *Trump floats wider IRS tax exemption crackdown*, The Hill, April 17, 2025 (Trump floats wider IRS tax exemption crackdown).

fears of being retaliated against for their participation in this lawsuit. Good cause therefore exists

to protect Certain Organizational Declarants from retaliation and "oppression." Fed. R. Civ. P.

26(c)(1).

The Proposed Protective Order seeks to alleviate these concerns. Critical to these

protections is paragraph 2 of the Proposed Protective Order, which reads:

> Defendants' Counsel of Record shall not disclose Certain Organizational
> Declarants' names or any Other Identifying Information to any person, except (a)
> to Defendants, their counsel, or any of the Defendants' employees or other agents,
> ***but only to the extent necessary to litigate this action*** (and subject to Paragraph 6,
> below), or (b) as otherwise explicitly authorized by any protective order
> subsequently entered in this action concerning discovery procedures and protection
> of confidential information including Identifying Information. Any person to whom
> such disclosure is made shall not use that information for any purpose other than as
> necessary to litigate this action, and ***in no instance shall the fact of a Certain***
> ***Organizational Declarant's participation in this litigation be considered in***
> ***granting, denying, or otherwise reviewing any pending or future application for***
> ***NIH/HHS funding, any appeal of a termination of funding, or any funding***
> ***previously approved by NIH/HHS***.

Exhibit A ¶ 2 (emphasis added). This language provides two key protections for Certain

Organizational Declarants: (i) it limits those individuals who are privy to the identities of Certain

Organizational Declarants to only those *necessary to litigate* the action; and (ii) it provides that

knowledge of a Certain Organizational Declarant's involvement in this lawsuit cannot be used in

a retaliatory manner to deny access to future NIH/HHS funding. These are basic, targeted

protections that are well within reason, especially when balancing the privacy and safety

considerations of nonparties. *See Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc.*, 425

F.3d 67, 73–74 (1st Cir. 2005) (noting that a trial judge has broad discretion in crafting a protective

order appropriate to the situation and facts, and upholding trial judge's protective order which

balanced third party physicians' privacy and safety concerns with plaintiffs' interest in conducting

discovery).

Certain Organizational Declarants are not seeking to keep their identities protected from disclosure to Defendants. Rather, they are seeking reasonable assurances that their participation in this litigation will not lead to public disclosure – potentially resulting in harassment and threats – nor blacklisting by NIH/HHS – leading to lasting economic and career harms. The Proposed Protective Order strikes the right balance for protection of nonparties to the litigation.

## CONCLUSION

For the reasons discussed herein, Plaintiffs' Motion for Protective Order should be granted.

Dated: April 25, 2025

Respectfully submitted,

/s/ Jessie J. Rossman
Jessie J. Rossman (BBO # 670685)
Suzanne Schlossberg (BBO #703914)
**American Civil Liberties Union**
  **Foundation of Massachusetts, Inc.**
One Center Plaza, Suite 850
Boston, MA 02108
Telephone: (617) 482-3170
jrossman@aclum.org
sschlossberg@aclum.org

Olga Akselrod*
Alexis Agathocleous*
Rachel Meeropol*
Alejandro Ortiz*
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2659
oakselrod@aclu.org
aagathocleous@aclu.org
rmeeropol@aclu.org
ortiza@aclu.org

Shalini Goel Agarwal*
shalini.agarwal@protectdemocracy.org
**Protect Democracy Project**

7

2020 Pennsylvania Ave., NW, Ste. 163
Washington, DC 20006
Telephone: (202) 579-4582
shalini.agarwal@protectdemocracy.org

Michel-Ange Desruisseaux*
82 Nassau Street, #601
New York, NY 10038
Michel-
ange.desruisseaux@protectdemocracy.org

Kenneth Parreno**
15 Main Street, Suite 312
Watertown, MA 02472
kenneth.parreno@protectdemocracy.org

Lisa S. Mankofsky*
Oscar Heanue*
**Center for Science in the Public Interest**
1250 I St., NW, Suite 500
Washington, DC 20005
Telephone: (202) 777-8381
lmankofsky@cspinet.org
oheanue@cspinet.org

*Counsel for Plaintiffs*

*\* Admitted pro hac vice*
*\*\* Application for admission forthcoming*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2025 a true copy of the above document was filed via the

Court's CM/ECF system and that a copy will be sent automatically to all counsel of record.


April 25, 2025                                          /s/ *Jessie J. Rossman*
                                                       Jessie J. Rossman