UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN PUBLIC HEALTH ASSOCIATION; IBIS REPRODUCTIVE HEALTH; INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS (UAW); BRITTANY CHARLTON; KATIE EDWARDS; PETER LURIE; and NICOLE MAPHIS,<br><br>*Plaintiffs*,<br><br>v.<br><br>NATIONAL INSTITUTES OF HEALTH; JAY BHATTACHARYA, *in his official capacity as Director of the National Institutes of Health*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; and ROBERT F. KENNEDY, JR.*, in his official capacity as Secretary of the United States Department of Health and Human Services*,<br><br>*Defendants*. | Case No. 1:25-cv-10787-WGY |

**SUPPLEMENTAL BRIEF REGARDING STANDING OF PLAINTIFF UAW**

In accordance with the Court's permission during the oral argument held in this matter on May 22, 2025, Plaintiffs provide this Supplemental Brief to address the Court's questions regarding Plaintiff UAW's standing, including the Court's reference at argument to two recent decisions involving union plaintiffs: one by Judge O'Toole in the U.S. District Court for the

1

District of Massachusetts, the other by Judge Alsup in U.S. District Court for the Northern District of California.

As set forth in Plaintiffs' memorandum of law in support of their motion for a preliminary injunction, ECF No. 41, at 18 n.15, 19, and their reply in support of that motion, ECF No. 71, at 11, UAW seeks in this case to vindicate its members' interests by asserting associational standing. And it is long-established that "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). NIH's grant cancellations are causing layoffs and reduced hours and training opportunities among UAW members, not to mention harm to public health. ECF No. 38-25, at ¶¶ 10, 11, and 13. The Government does not dispute those injuries. It instead argues that UAW lacks standing because its role in this case is not "germane" to its purpose. ECF No. 66, at 27. This overlooks a union's fundamental purpose. Unions like UAW *exist* to represent their members' interests in relation to their terms and conditions of employment. *See e.g.*, ECF No. 38-25, at ¶ 15 ("UAW is a plaintiff in this lawsuit to protect UAW-represented workers' terms & conditions of employment insofar as NIH directly funds UAW member jobs and the loss or threatened loss of funding jeopardizes UAW members' jobs, as well as training opportunities NIH would have funded."); 29 U.S.C. § 152(5) (defining a "labor organization" like UAW to mean an organization "which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."); *see also Constitution of the International Union*, UAW, Art. 2, § 5 (among UAW's goals is to "engage in legislative, political, educational, civic, welfare and other activities which further, directly or indirectly, the joint interests of the membership of this organization in the improvement of general economic and social conditions in the United States of America, Canada, the Commonwealth of Puerto Rico and generally in the

nations of the world.").[1] Contrary to Defendants' suggestion during oral argument, UAW's purpose extends beyond representing its members in collective bargaining.

UAW thus easily satisfies the "undemanding" germaneness test. *Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1159 (9th Cir. 1998). Courts in this District and elsewhere have accordingly found associational standing for unions to proceed in similar circumstances. *See, e.g.*, *State of New York v. McMahon*, No. 1:25-cv-10601, 2025 WL 1463009, at *18 (D. Mass. May 22, 2025) (holding union plaintiffs had associational standing to challenge the dismantling of the Department of Education where "[t]he labor union SEIU is guided by a 'vision for a just society where all workers are valued and all people are respected.' SEIU's local chapter, CSUEU represents a bargaining unit of student assistants at California State University,' and '[t]housands of these student assistants rely on aid via federal work study positions' as well as 'to afford tuition, food, rent, other living expenses, and transportation off-campus internships.'"); *see also UAW v. Brock*, 477 U.S. 274, 286–87 (1986) (UAW has associational standing to challenge Department of Labor benefits policy because securing insurance benefits for its membership is germane to its purpose, as understood through examination of UAW Constitution); *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 556 n.6 (1996) (holding that "the paramount role, under federal labor law, that unions play in protecting the interests of their members" supported finding that a lawsuit concerning failure to warn of layoffs was germane to a union's purpose); *Chicago John Dineen Lodge #7 v. Kersten*, No. 24-CV-7376, 2025 WL 1207314, at *3 (N.D. Ill. Apr. 24, 2025) ("Courts often hold that a union has a germane interest in protecting the rights of its members.") (collecting cases).

---

[1] UAW, *Constitution of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America* (June 7, 2024), https://uaw.org/wp-content/uploads/2024/06/Updated-2022-Constitution-6-7-24-1.pdf.

This Court also referenced two cases during the May 22 argument as potentially bearing on UAW's standing in this case: one decided by Judge O'Toole in Massachusetts and another by Judge Alsup in California. The first is easily distinguishable. The second supports UAW's associational standing here.

First, *Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell*, No. CV 25-10276-GAO, 2025 WL 470459 (D. Mass. Feb. 12, 2025) does not bear on UAW's standing here because it addressed organizational, not associational, standing. Citing *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024), Judge O'Toole explained that standing requires a "personal stake in the dispute" and that an organization cannot establish standing by "divert[ing] its resources in response to a defendant's actions."[2] This explanation is consistent with the concept of organizational standing, which requires an injury to the organization itself; associational standing, by contrast, does not. *See Warth*, 422 U.S. at 511. The court's reasoning in *Ezell* is therefore relevant only to organizational standing—the theory of standing at issue in the *FDA* case on which it relied—not associational standing. *FDA*, 602 U.S. at 393 ("That leaves the medical associations' argument that the associations themselves have organizational standing."). *Ezell*'s focus on organizational standing was warranted given the allegations in that case: the plaintiff unions alleged injuries to themselves, as opposed to their members. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell*, 2025 WL 418060, at ¶¶ 124–140 (D. Mass.) ("The Directive impedes Plaintiffs' ability to perform their missions."). They thus sought a form of standing, organizational standing, which UAW does not seek here.

---

[2] For an organization to demonstrate an "injury in fact" sufficient to confer organizational standing, an organization must show more than a setback to the organization's abstract social interests. Rather, it must show a "concrete and demonstrable injury to [its] activities . . . with [a] consequent drain on the organization's resources." *People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

Second, Judge Alsup's analysis in *Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Pers. Mgmt.*, No. C 25-01780 WHA, 2025 WL 1150698 (N.D. Cal. Apr. 18, 2025), supports UAW's associational standing here. There, Judge Alsup considered whether the plaintiff unions had either organizational or associational standing to challenge the Office of Personnel Management's unlawful usurpation of other federal agencies' authority to hire and fire their own employees. *Id.* at *1, 9–12. The court ruled that the unions satisfied both approaches to standing.[3] With respect to associational standing, union members were fired—a clearly adequate injury. *Id*. at *9–10. Judge Alsup emphasized that the unions "each represent probationary employees who have been summarily fired, and falsely informed that their termination was based on performance" and "[e]ach Union Plaintiff has the core function of representing employees in federal bargaining units in collective bargaining and providing counseling, advice, and representation to represented employees in the event of adverse employment actions." *Id.* at *9. The plaintiff unions thus satisfied the standard for associational standing.

The Government there, for its part, argued against associational standing because the unions "have not alleged ... nor could they show, that *all* of their members: [ ] have been affected by the terminations of probationary employees as not all their members are probationary employees." *Id*. at *12. Judge Alsup correctly rejected this argument, explaining that "an organization establishes representational standing where it shows that some subset of its members have been, or imminently stand to be, injured" and finding that "Union plaintiffs have done so here."[4] *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 182–183 (2000)). That same reasoning also applies here.

---

[3] The Court found organizational standing appropriate based on the unions' concrete showing that OPM's directive "'directly affected and interfered with [their] core business activities' and organizational mission." *Id*. at *11.

[4] "Associational standing" is one strand of "representational standing"; both terms are distinct from "organizational standing." *Brown Grp., Inc.*, 517 U.S. at 557.

For these reasons, Plaintiffs ask the Court to conclude that UAW has associational standing to proceed in this case.

Dated: May 19, 2025

Shalini Goel Agarwal
shalini.agarwal@protectdemocracy.org
**Protect Democracy Project**
2020 Pennsylvania Ave., NW, Ste. 163
Washington, DC 20006
202-579-4582
shalini.agarwal@protectdemocracy.org

Michel-Ange Desruisseaux
82 Nassau Street, #601
New York, NY 10038
michel-ange.desruisseaux@protectdemocracy.org

Kenneth Parreno
15 Main Street, Suite 312
Watertown, MA 02472
kenneth.parreno@protectdemocracy.org

Lisa S. Mankofsky
Oscar Heanue
**Center for Science in the Public Interest**
1250 I St., NW, Suite 500
Washington, DC 20005
202-777-8381
lmankofsky@cspinet.org
oheanue@cspinet.org

Respectfully submitted,

*/s/ Alejandro Ortiz*
Alejandro Ortiz
Olga Akselrod
Alexis Agathocleous
Rachel Meeropol
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
(212-549-2659
oakselrod@aclu.org
aagathocleous@aclu.org
rmeeropol@aclu.org
ortiza@aclu.org

Jessie J. Rossman
Suzanne Schlossberg
**American Civil Liberties Union Foundation of Massachusetts, Inc.**
One Center Plaza, Suite 801
Boston, MA 02018
617-482-3170
jrossman@aclum.org
sschlossberg@aclum.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2025 a true and correct copy of the above document was filed via the Court's CM/ECF system and that a copy will be sent automatically to all counsel of record.

| | |
|---|---|
| May 23, 2025 | /s/ *Alejandro Ortiz* <br> Alejandro Ortiz |