```
1                UNITED STATES DISTRICT COURT

2                  DISTRICT OF MASSACHUSETTS (Boston)

3                                    No. 1:25-cv-10814-WGY

4

    COMMONWEALTH OF MASSACHUSETTS, et al,
5            Plaintiffs
    vs.
6
    ROBERT F. KENNEDY, JR., et al,
7            Defendants

8

                                     No. 1:25-cv-10787-WGY
9

    AMERICAN PUBLIC HEALTH ASSOCIATION, et al,
10           Plaintiffs
    vs.
11
    NATIONAL INSTITUTES OF HEALTH, et al,
12           Defendants

13

                         * * * * * * * *
14

                       For Hearing Before:
15                     Judge William G. Young

16

                        Status Conference
17

18                     United States District Court
                       District of Massachusetts (Boston.)
19                     One Courthouse Way
                       Boston, Massachusetts 02210
20                     Tuesday, June 3, 2025

21

                         * * * * * * *
22

23             REPORTER: RICHARD H. ROMANOW, RPR
                        Official Court Reporter
24                     United States District Court
          One Courthouse Way, Room 5510, Boston, MA 02210
25                       rhr3tubas@aol.com
```

```
 1                    A P P E A R A N C E S

 2

 3    GERARD J. CEDRONE, ESQ.
      KATHERINE B. DIRKS, ESQ.
 4    PHOEBE LOCKHART, ESQ.
         Massachusetts Attorney General's Office
 5       One Ashburton Place, 20th Floor
         Boston, MA 02108
 6       (617) 963-2282
         E-mail: Gerard.cedrone@mass.gov
 7       For the Commonwealth of Massachusetts plaintiffs
      and
 8    OLGA AKSELROD, ESQ.
      JESSIE J. ROSSMAN, ESQ.
 9       American Civil Liberties Union Foundation
         125 Broad Street
10       New York, NY 10004
         (212) 549-2659
11       Email: Oakselrod@aclu.org
         For the APHA plaintiffs
12

13    THOMAS PORTS, JR., ESQ.
         DOJ-Enrd
14       P.O. Box 875
         Ben Franklin Station
15       Washington, DC 20044
         (202) 307-1105
16       Email: Thomas.ports@usdoj.gov
      and
17    ANUJ K. KHETARPAL, ESQ.
         United States Attorney's Office
18       1 Courthouse Way, Suite 9200
         Boston, MA 02210
19       (617) 823-6325
         Email: Anuj.khetarpal@usdoj.gov
20       For all defendants

21

22

23

24

25
```

1      P R O C E E D I N G S

2      (Begins, 11:00 a.m.)

3      THE CLERK:  Civil Matter 25-10787, the American

4   Public Health Association, et al vs. the National

5   Institute of Health, et al, and 25-10814, the

6   Commonwealth of Massachusetts et al, vs. Kennedy, et al.

7      THE COURT:  Well good morning counsel.  We won't

8   go through having everyone introduce themselves, but

9   when you speak, if you could remember to introduce

10   yourself, simply so that the Court Reporter's record is

11   accurate.  Let me tee up what I think I want to do here

12   and, um, where we're going to go.

13      I wanted to have this status conference because

14   there is the second of these two related cases, and I

15   wanted to, um, have a conference where all parties could

16   be present and, um, see the extent and the order in

17   which they could be consolidated.  So that was my

18   purpose in calling this conference.

19      Or I should say, as I have in other such hearings,

20   I have authorized internet access to this conference.

21   Having done so, let me say, if you are attending this

22   conference via the internet, have in mind the rules of

23   court remain in full force and effect, which means

24   there's no taping, streaming, rebroadcast, screen shots,

25   or other transcription of these proceedings.

1          So, um, coincident with my scheduling the

2     conference, um, various things have been done in the, um

3     -- I've been given a proposed schedule for further

4     proceedings in the first of the two cases and, um, in

5     very large measure it makes perfect sense, though I want

6     to make some comments about it, and emendations.  But I

7     am very grateful to the parties for the manner in which

8     you're working together.

9          Second, consistent with the Court's order in the

10    first of the two cases -- or at least in the first of

11    the two cases, the government has, consistent with the

12    Court's order, um, filed the administrative record.

13    Here it is.  You will understand I haven't looked at it

14    since the 2nd of June.  But a question to government

15    counsel.

16          Is this the record as you see it in both cases or

17    just the first?

18          MR. PORTS:  Thank you, your Honor.  Tom Ports for

19    the government.

20          This record is the -- it is the government's

21    position that this is and will be the record for both

22    cases.  I will say that -- and we had some discussion

23    about this earlier, um, all parties met at 9:30 today in

24    the U.S. Attorney's Office.  The United States believed,

25    as the Court previewed the last time, that there are a

1    handful of discrete reasons why grants were terminated.

2    If you look at the different paragraphs, they tend to

3    line up across the various terminations.

4         We have compiled all -- everything considered

5    directly and indirectly for those reasons.  It does not

6    include the actual termination documents for all of the

7    PDFs in the, um, the related case.  So the second-filed

8    case, we don't have all of the actual termination

9    documents.  However we believe it is very unlikely that

10   there will be any other reasons or justifications, and

11   therefore this record is sufficient and contains

12   everything directly or indirectly for that case as well.

13        I can represent that what I told the plaintiffs

14   that I would suggest, in the second-filed case, is if

15   plaintiffs would let us know or let the Court know, by

16   the 5th, if there is any other justification that is not

17   included in a termination record in that record, then we

18   can promptly complete the record for the second case

19   with anything in addition, and, um, then everything will

20   be thoroughly complete and we'd be able to proceed with

21   everything by the 16th.  We think that's very unlikely

22   that there are any different reasons.  But, um, it is of

23   course possible.  And we think that is a way to proceed

24   and resolve everything in Phase 1 together.

25        THE COURT:  Thank you, that's a direct answer to

```
1   my question and I appreciate it.

2         Now, um --

3         MS. AKSELROD:  Your Honor, um --

4         THE COURT:  Yes?

5         MS. AKSELROD:  May I respond on behalf of the APHA

6   plaintiffs with regard to the completeness of the record

7   or would you like me to wait on that?

8         THE COURT:  I'd like you to wait.

9         MS. AKSELROD:  Thank you, your Honor.

10        THE COURT:  Saying I thank you, doesn't mean

11  that's it.  And let's jump right there.

12        In point of fact, um, I've been reflecting on what

13  has been filed thus far and in two respects, um, if --

14  if I don't have this in the record, I expect it by the

15  16th.  So let me start with that.  If it's there, fine.

16        But I read Footnote 1 on this schedule for further

17  proceedings and respectfully, um, the defense either

18  misunderstood or mischaracterizes the Court's view.  I

19  do think the very first issue to be considered is, um,

20  the challenged directives, and so I need a record with

21  respect to the challenged directives.

22        Specifically I expect -- I've come to understand

23  that in this iterative process, the various universities

24  were putting out algorithms about how to write grants

25  and, um, "Stay away from this word," and "Don't say
```

1    that," and the like, "if you're seeking a grant."  So

2    one imagines, given the speed with which the defendants

3    acted here, that there was guidance to the people who

4    made the determinations, or the person who made the

5    determination, and I expect it.  I expect to see it.  If

6    there's an algorithm, if there's guidance, wherever it

7    came from, I want to see what it is.  The record to be

8    supplemented in that respect.

9         Second, I've also come across this database called

10    "Grant Watch," which is really rather intriguing, um,

11    and since everybody seems to look at Grant Watch for,

12    um, the data concerning grants from the NIH, recognizing

13    that this case, um, certainly in its Phase 1 is

14    limited -- let me be very clear, is limited to grants

15    terminated, not restored, not expired, that, um, in the

16    first case, and the second case, the list with which

17    we're working -- and to the extent we can pare that list

18    down by settlement or otherwise, that's a good thing.

19    But, um, I think Grant Watch may best qualify, um --

20    save the government's rights, they may want to brief

21    this, but I think it qualifies under Federal Rule of

22    Evidence 80317.  This is like a, um -- like a

23    "Physician's Desk Reference" or something.

24         So the parties are free, because the universe of

25    grants of course goes well beyond the grant that, um,

1    whatever I have to say about the challenged directives,

2    any relief, if any there is, has to do only with the,

3    um, grants that are, at least the first phase, that are

4    listed in the materials already filed.

5        So let me turn to this document now, which I do

6    think is very helpful.

7        So the government, um, has filed its position on

8    the, um, administrative record, um, and whether or not

9    the defense agrees with it -- and that's the reason I

10   cut counsel off, the proposal here sets forth very

11   prompt time limits for challenging the completeness of

12   the administrative record.  I'm not going anywhere.  It

13   makes perfect sense.  I seek to hold myself to the --

14   and hold you to the, um, what's set forth on Page 2 in

15   Paragraph, um, 2 and 3 of the proposed schedule.

16       And again, the government has every right to

17   contend that the record is complete and that the

18   supplementation is either irrelevant or, um, it ought

19   not be supplemented.  But I've said what I'm looking for

20   here.

21       Now we're on for the 16th.  I propose to give you

22   -- it's on at 10:00 on the 16th.  I think we can thrash

23   our way through the argument here in the morning, and

24   the morning to me lasts till 1:00 -- um, from 10:00 till

25   1:00, I may need a brief recess, but I think we can

1    thrash our way through.

2        Now then we get to this proposed second phase.

3    And I agree that that will be heard thereafter, um, and

4    here I see the parties differ markedly.  Let me be as

5    helpful as I can as to what I expect will follow.

6        You people have shown some amenability to

7    resolving this partially or, one can always hope,

8    wholly, um, with respect to certain or more of the

9    challenged grants, so I want to know, at least in

10   general -- and I recognize this is jury-waived, but I

11   will start off the proceedings at 10:00 on the 16th.

12   And again, I'll do this at the sidebar.  The parties can

13   agree to private resolution, and I will say, "Well have

14   you settled any of this, and if so, what?"  And you'll

15   tell me.  And those conferences will be sealed.  We

16   won't get into substance at all.  And then we'll spend

17   the rest of the morning talking about, um, really the

18   first phase of the case, the applicable law and what can

19   be discerned from the administrative record.

20       Then close on to 1:00, I will say -- and maybe it

21   will go faster than that, but maybe not, I will say,

22   "Well, um, now that you've heard me" -- and I've done --

23   I've followed this technique in other cases, so I want

24   you to know it now.  "Now that you've heard my questions

25   and my concerns and how I dealt with the answers and the

1    like, um, you tell me, do you want me to stay my hand

2    for any particular period of time, because you could

3    work out this part of it, or you could work out all of

4    it, or" -- and you'd both have to agree, or you'd say,

5    "No, we want the decision."

6         And then I will say, um -- but I'm giving a range

7    here because I have no idea where we'll be at 1:00 on

8    the 16th, I will say, um -- it goes from nothing, in

9    which I will say, "I'll take the matter under

10   advisement, thank you very much," and that's what you'll

11   hear from me until, at minimum, some order comes out,

12   and at maximum, the full opinion comes out.  That's one

13   end of the spectrum.

14        The other end of the -- well I'm not going to be

15   able to -- I really am looking forward to the 16th.  I

16   have no preconceived notions about this case.  I'm going

17   to tell you the concern I have, but that's downstream.

18        So, um, all I'll say -- a combination like this,

19   it won't be any opinion, but I'll say, "Well, you know I

20   think" -- because I'm very sensitive that this started

21   out with a preliminary injunction collapsed into trial

22   on the merits, I'll say, "I think it's coming out, at

23   least in this area, this way or that way or whatever."

24   And, um, maybe I will be sufficiently confident to enter

25   an order.  Most likely I will not.  But, um, the

 1    likelihood probably will be that an order will precede

 2    the full opinion, because I will have the full record,

 3    I'll have the advantage of your briefs and your

 4    arguments, and, um, cases don't -- unlike fine wine,

 5    don't get any better with delay.  So they'll be at least

 6    a partial order, probably pretty fast, on the first

 7    phase of the case.  Unless you tell me the other, you

 8    say, "No, stay your hand for a week, two weeks,

 9    whatever, maybe we'll work it out."

10        Then, when you see the way I see this case, once

11    that's out there, the rest of it is writing, and it

12    implicates of course the second phase, because if it

13    goes all the government's way, I don't see much to the

14    second phase.  And he tells me there isn't much to the

15    second phase anyway.  Maybe that's right, maybe that's

16    not right.

17        If it goes significantly the plaintiff's way, the

18    second phase is, in my mind, a different consideration.

19    But the schedule that is posited here -- and I have full

20    respect for the government saying that the

21    administrative record is the, um, is appropriate, and

22    only appropriate, um, actually the way you've written it

23    is fully satisfactory to me, because it says -- and I'm

24    now on Page 4 of the government's, I guess -- I take it

25    it's the government's proposal?  Yes, the defendants'

```
 1    position.  I think their schedule makes good sense.
 2    And, um, at least -- and I propose then to adhere to it.
 3    You said "the conclusion of the Phase 1," I propose to
 4    adopt it, and within 7 days, the motion to dismiss,
 5    within 10 days, etc., as it appears on Page 4.
 6         Now let me stop there and ask for questions and
 7    I'll resolve whatever needs to be resolved, I hope, and
 8    then we'll move to the second of the two cases, which I
 9    hope you will tell me can be resolved on the same
10    schedule, and the first case, we'll agree.  But we
11    haven't had everyone in court until today.
12         So here's my concern.  And my concern is an
13    unformulated concern, because it comes only -- I don't
14    have the advantage of the administrative record, so
15    candidly it comes from these, um, just looking at the
16    initial spreadsheet and the subject matter of these
17    various grants, um, I -- I have real concerns about
18    evenhandedness here.
19         I have concerns about -- and about health care.  I
20    have concerns about black Americans.  I have concerns
21    about women.  I have concerns about, um, legitimate
22    gender issues having to do with health.  But don't any
23    of you take this as prejudging anything.  It isn't.
24    It's just the Court's attempt to be fully transparent
25    and to grapple with the issues that the Court is duty-
```

1    bound to grapple with.

2          So -- and for the first round, questions?  And

3    we'll start with the plaintiffs, questions on those

4    things?  I had not thought of this as an argument

5    session, which is not to foreclose argument, if it's

6    necessary, but I came prepared for scheduling and not

7    argument.

8          So the plaintiffs, please.

9          MR. CEDRONE:  Good morning, your Honor, Gerard

10   Cedrone for the Massachusetts Attorney General's Office

11   on behalf of the plaintiffs in the states' case.  I

12   wanted to raise two issues related to the scheduling on

13   Phase 2 and react to, um, your Honor's statements about

14   the schedule there.  The first relates to the question

15   of discovery and the second relates to the schedule more

16   generally.

17         First, as we previewed here briefly, we do believe

18   that discovery is appropriate on most claims and that

19   they're not properly limited to the administrative

20   record.  I don't want to -- if your Honor's not

21   expecting argument today, I don't want to launch into an

22   argument, but we do stress that we think that's

23   appropriate and are happy to brief that or argue that

24   today or at another time, because we do think

25   unreasonable delay claims, unlike claims under Section

1    7062, the essence of the claim is there is no final

2    agency action, and so unlike --

3              THE COURT:  You're now getting into --

4              MR. CEDRONE:  I'm straying into argument, yes.

5              THE COURT:  But I'm following, and so I think I

6    can make a direct answer.

7              I'm not surprised by what you're saying.  The

8    schedule that now I've tentatively adopted, once we're

9    concluded with the first phase, you can expect they'll

10   move to dismiss.  I'll entertain it.  I'll rule on it.

11   But we'll assume you survive it.  Though I express no

12   opinion.  And as part and parcel of that, one imagines I

13   will hear fully the need for extra-record development.

14   And, um, again, that's his last paragraph in the

15   proposal.  So we will then, to the extent -- don't think

16   I'm with you here, but we're trying to tease out an

17   intelligent way forward, then we'll talk about the

18   schedule to get at that.

19             Does that answer your question?

20             MR. CEDRONE:  It does, your Honor.  And that leads

21   me to the second question or issue that I wanted to

22   highlight with the schedule.  We are concerned that this

23   schedule here, especially for a claim that is grounded

24   in undue-delay risks, moving the resolution of these

25   issues close to the end of the government's fiscal year,

1    so this contemplates that after Phase 1 is completed,

2    they'll be a week for them to move to dismiss, and then

3    however long that takes to resolve --

4         THE COURT:  You want it faster?

5         MR. CEDRONE:  I do, I think we should walk and

6    chew gum.  If they have, you know, a motion to dismiss

7    on those claims, they've had our --

8         THE COURT:  You've got a -- (Laughs.)  I think I

9    can walk and chew gum, um, and I don't hear you to

10   suggest otherwise.

11        What schedule do you suggest?

12        MR. CEDRONE:  No, I'm suggesting that the federal

13   government respectfully should walk and chew gum.  We

14   can litigate Phase 1 while I think they file any motion

15   to dismiss that they have, you know, in short order, and

16   produce any administrative record on the second phase in

17   short order.  They've had our complaint since April,

18   they've had a --

19        THE COURT:  Well the logic though is that I ought

20   to hear and in my mind react to Phase 1.  Now -- you

21   know the truth is, now that we've engaged, I'm going as

22   fast as I can, and when I say, "Well maybe I'll make an

23   order" -- orders get revised in the discipline of

24   writing full opinions.  But I, at least conceptually,

25   I'm prepared to take that risk however it comes out.

1    But, um, maybe I should say that, um, not within 7 days,

2    but if they have a motion to dismiss as to Phase 2, the

3    motion to dismiss must be filed, um, coincident with

4    Phase 1, the 16th?

5         MR. CEDRONE:  We think at least that would be

6    appropriate.  And I just want to be clear, I was not

7    suggesting that --

8         THE COURT:  Of course you were not.  Of course you

9    were not.

10        MR. CEDRONE:  (Laughs.)  We appreciate the

11   dispatch with which this Court acts.

12        THE COURT:  As in any case, we're all here

13   together reaching out for justice.  That's my concept of

14   the thing.

15        So to be fair, I'll modify it.  If they want to

16   dismiss, um, the second phase, any motion to dismiss the

17   second phase will be filed no later than -- filed, not

18   entertained on the 16th, but filed no later than the

19   16th.  The rest of it all stands.

20        Doesn't that make sense?

21        MR. CEDRONE:  I think that would be appropriate.

22   And the other, I think, suggestion we would have is that

23   30 days --

24        THE COURT:  If I knock that out, or to the extent

25   I deny it, we'll give them 30 days to prepare the

 1    record.

 2         How's that?

 3         MR. CEDRONE:  I think that's a bit long,

 4    respectfully, your Honor.  It's longer than they were

 5    given to produce the record for Phase 1.

 6         THE COURT:  You said he didn't think -- well

 7    actually --

 8         Mr. Ports, you said there wouldn't be much problem

 9    in producing the record for Phase 2, would there?

10         MR. PORTS:  I believe I'm not -- I'm not sure what

11    your Honor is referring to.  We would request 30 days to

12    file the Phase 2 record, um, as we've requested here.  I

13    can also respond to filing it coincident with the

14    hearing on the 16th as well.  If we can do that, if

15    that's the Court's order, we believe there would be some

16    benefit from going through the proceeding, hearing the

17    Court's thinking, and having a sense of the resolution,

18    before we file our motion to dismiss on Phase 2, which

19    is why we propose 7 days, which is, we believe, a very

20    short period of time that would allow us to focus on

21    Phase 1 and get it resolved.  I understand the Court's

22    thinking, to perhaps get a preliminary ruling, um, get a

23    better understanding of Phase 2 at the time we move to

24    dismiss.

25         So we do think that there is a benefit to 7 days

 1   or at least some period of days after the 16th.

 2          THE COURT:  Okay.  How about this?  How about

 3   this?  We'll have the hearing on the 16th.  I'll do the

 4   best I can, whatever that is.  But that's substantive,

 5   that will be the findings and rulings.  Any motion to

 6   dismiss need not be filed on the 16th, but must be filed

 7   by the 20th.  And then, rather than 30 days, we'll give

 8   you until the, um, 9th of July to file the

 9   administrative record.

10          How's that?

11          MR. PORTS:  Thank you, your Honor, we -- that

12   seems to be --

13          THE COURT:  You really --

14          (Zoom interference.)

15          MR. PORTS:  Yes, your Honor.

16          THE COURT:  Well that's an intelligent and

17   lawyer-like answer.

18          Now, Mr. Cedrone, I -- I'm trying to be fair.

19   That's acceptable to you?

20          MR. CEDRONE:  Thank you, your Honor.  It is.

21          THE COURT:  And I'll again try, um, consistent

22   with other obligations, to address it promptly.

23          Other questions?

24          MR. CEDRONE:  I don't believe so for the state

25   plaintiffs.

1          THE COURT:  Yeah.

2          MR. PORTS:  For defendants, we just want to

3     clarify that yesterday we received three deposition

4     notices for next week, requests for production and

5     interrogatory responses related to Phase 2, and we just

6     wanted to make clear that the defendants need not

7     respond to these until -- unless and until there's any

8     motion to complete or supplement the record and a ruling

9     on that in Phase 2 from the Court.

10          THE COURT:  I think that makes sense, but then

11     we're not going to be waiting, so you'd better line

12     those people up, and you'd better be thinking about the

13     answers to interrogatories, because I will give a very

14     short time for discovery.

15          You understand?

16          MR. PORTS:  If the Court orders that discovery is

17     appropriate.

18          THE COURT:  If we get there.

19          MR. PORTS:  Understood, your Honor.

20          THE COURT:  Right.  They told you what they want.

21     Be thinking about it.

22          MR. PORTS:  Yes, your Honor.

23          THE COURT:  All right.

24          Now let's turn to the second case.  And my thought

25     is, um, in view of Mr. Ports saying that but-for

1    individual notices on the specific grants that you have

2    now filed, he doesn't anticipate anything else, can we

3    treat the second case coincident with the first and hear

4    you on the 16th?

5        MS. AKSELROD:  Your Honor, Olga Akselrod with the

6    ACLU on behalf of the APHA plaintiffs.

7        We are absolutely in favor of consolidating our

8    proceedings with the June 16th hearing and believe that,

9    um, the record as to the directives, um, may well decide

10    many many of the issues in this case.  But there is a

11    difference in terms of the record that has been produced

12    in the states' case and the record that has been

13    produced in our case.

14        As you know, in the states' case the individual

15    termination ARs have been produced, and those are set to

16    be produced, um, by the defendants on June 16th in our

17    case.

18        We have, um, proposed that the parties meet and

19    confer on June 5th, um, which would give us enough time

20    to review what has been, um -- what has been provided as

21    to the ARs in the states' case.  The defendants have

22    proposed potential stipulations that may obviate the

23    need for, um, submitting the individual terminations AR

24    in our case, and we just need the parties to have a

25    little more time for us to review the record, um, and

1   also to figure out whether such stipulations would be

2   sufficient.

3           THE COURT:  All right.  Yeah, look, I gave them

4   day for day what I gave the states from your start time.

5           MS. AKSELROD:  Yes, your Honor.

6           THE COURT:  I'm not -- I'm not going to revise

7   that.  I did that having thought it through.  Having

8   said that, there is so much to be gained by agreement.

9   And I urge -- but I am not ordering, and I'm not setting

10  interim dates, further agreement.

11          I hear you say that you will -- however it works

12  out, if you don't agree, you want to be heard and argue

13  as to these directives, and, to the extent you can

14  legally, you want to argue as to, um, grant terminations

15  in your case on the 16th.

16          Right?

17          MS. AKSELROD:  Yes, your Honor.

18          THE COURT:  And I propose, in that 3 hours, to

19  hear you.  And I propose -- I intend to hold myself

20  ready for argument in -- I'm calling it the "second

21  case," but only that's because it -- how it emerged into

22  my consciousness.  It's not "second" in any way and I've

23  spoken to it on an individual basis.

24          So I'm simply going to hold you to that.  We'll do

25  the first phase and then we'll see where we are.

1        MS. AKSELROD:  Thank you, your Honor.

2        And we would propose that on June 6th, we would be

3    able to provide the Court with a status report as to the

4    parties' discussions and what if any additional ARs may

5    need to be produced, and a proposed sort of

6    supplemental, um, schedule for how to deal with those.

7        THE COURT:  Well you're looking for a court order.

8    You can file anything you want.

9        I do enjoy meeting with you all.  Really that's

10    not a personal thing, there's much to be said for the

11    management and the joint efforts that everyone is

12    putting into these two cases.  At the same time, I'm not

13    big on status conferences.

14        So you file what you want.  I'll do -- I won't say

15    "what I want," but I will enter a due-appropriate order

16    or no order.  I have the case now entrained for argument

17    on the 16th.  I've got a lot of stuff to look at.  I

18    suggested other things I want to look at and I do want

19    to look at them.  And I have legal work to do.  And I

20    intend to give you a full and fair hearing on the 16th.

21        If I hear no other questions, I think we can --

22        MS. AKSELROD:  Your Honor, I do have a few more

23    questions.

24        THE COURT:  Yes, go right ahead.

25        MS. AKSELROD:  So -- well, first of all, I just

```
 1   wanted to raise that the parties, um, did have some
 2   additional discussions over the course of the last two
 3   days on some modification to the schedule that was, um,
 4   proposed by the states and the defendants in that case.
 5   And I understand your Honor has adopted that schedule.
 6   We think that that schedule also makes a lot of sense in
 7   virtually every way.  But the parties have agreed to a
 8   couple of modifications.
 9        THE COURT:  If you agree to them, put them in
10   writing and let me know.
11        MS. AKSELROD:  Perfect.  Thank you, your Honor.
12        Secondly, um, I just wanted to clarify.  So, first
13   of all, of course to the extent that the parties are not
14   able to reach stipulations, um, by June 5th, we would be
15   arguing based on the directives AR, um, and wouldn't
16   have the benefit of being able to make argument with
17   regards to the grant termination AR, which we're not
18   receiving until June 16th.  So I just wanted to clarify
19   that we will be prepared to argue as to the directives
20   AR.  We believe that the grant terminations can be
21   resolved through the directives AR.  If the Court finds
22   that is unlawful, then relief would flow to those.  But
23   we just wanted to be clear that there may be a
24   limitation as to what we argue.
25        THE COURT:  You're making yourself clear.
```

1          MS. AKSELROD:  Perfect.  Thank you, your Honor.

2          And one, um, other clarification that I just

3     wanted to raise with regard to the scope of Phase 2, um,

4     and this is one of the ways that our case differs a

5     little bit with regard to how I think this Court has

6     framed Phase 2, which so far has been about unreasonable

7     delay and 7061.  And I just wanted to raise that in

8     addition to 7061 claims, the APHA plaintiffs have also

9     brought 7062 claims on behalf of the applicant.

10          THE COURT:  I understand.  I've ruled on -- I've

11     treated their argument as a motion to dismiss and I've

12     ruled on it.  Believe me, I understand what your

13     complaint raises.

14          MS. AKSELROD:  Yes, your Honor, thank you.  And

15     that is of course also a difference in the schedule

16     since, um, the motion to dismiss, as you've just noted,

17     has already been heard in our case.

18          I just wanted to also raise that, from our

19     perspective, the June 16th hearing as to the directives,

20     um, could give relief not only as to the grant

21     terminations, but also as to the suspension of applicant

22     processes based on the directives.

23          THE COURT:  I will tell you, in all candor, I had

24     not thought of that.  Now you may be arguing that, but

25     I'm trying to get my hands around this case, and, um,

1    while relief as to people actually -- as to grants

2    actually terminated is potential, that's why I wanted

3    the list.  So -- and that will be the Court's focus.

4          Obviously it's your complaint and you raise any

5    claim you wish.  I've ruled on a motion to dismiss.

6    It's my duty to adjudicate the claims.  Um, but that's

7    my response.

8          I think I'm -- the public officials are wrong to

9    say we're only going to talk about the grant

10   terminations, not these directives.  I want to know all

11   about these directives.  I want to know where they came

12   from.  I want to know why there were no edits.  And this

13   business, which is fulsomely set forth in your

14   complaint, we'll hear at least all about that.  I want a

15   full record as to those directives.  And then I want to

16   see how it plays out in cutting off funding for grants

17   approved.  That's what I thought we were talking about.

18         Now I guess all I can say is that's the Court's

19   focus and it will be the Court's focus on the 16th.  You

20   can feel free to raise anything that the complaint

21   raises.  But when we talk about potential orders and the

22   like, um, I'm limiting it to these plaintiffs, these

23   grant -- Phase 1, these grant terminations.  Now there

24   is a Phase 2.  I'm not expressing any opinion on that.

25         Is that helpful?

```
 1           MS. AKSELROD:  Yes, your Honor, it is.  I think we

 2     may, um, with the Court's permission, still spend a bit

 3     of time explaining how the directives expressly require

 4     an applicant --

 5           THE COURT:  You will, on the 16th, and you will

 6     not think that I am, um, prejudging it if you spend that

 7     little time towards the end.

 8           MS. AKSELROD:  Thank you, your Honor.

 9           THE COURT:  All right.

10           Any other questions?

11           And again, hope springs eternal.  If you resolve

12     this matter or a significant portion of it, a simple

13     call to Ms. Belmont is all that's necessary.

14           Yes, Mr. Ports?

15           MR. PORTS:  Yes, your Honor.  Thank you.

16           I wanted to clarify regarding the supplementing of

17     guidance about what is contained in the administrative

18     record.

19           Although it is the defendants' position that the

20     grant terminations should be reviewed, the

21     administrative record contains well-challenged

22     directives, um, the -- where the challenged directives

23     were considered, directly or indirectly, in the grant

24     terminations, they're a part of that administrative

25     record.  Where they were not, we have provided separate
```

```
 1    administrative records for the other, um, challenged
 2    directives, to the extent we have had record IDs.
 3          THE COURT:  You'll appreciate that I haven't
 4    reviewed it, and so if I've misspoken, it's solely
 5    because I have not yet had the chance to review it all.
 6          All right.
 7          MR. CEDRONE:  Your Honor --
 8          THE COURT:  I have another obligation here.
 9          MR. CEDRONE:  I just want to clarify what was just
10    established, which is that, um, having heard your
11    Honor's views and admonitions, that the administrative
12    record in the states' case is complete, um, in the
13    government's view.
14          THE COURT:  He said it was.
15          MR. CEDRONE:  Okay, I just wanted to make sure of
16    that.
17          THE COURT:  While I'm operating -- we talk about
18    "clarifications," um, the question is, um, that
19    "clarifications" all, respectfully, have to go to me.
20    I'm telling you what I think Mr. Ports has represented,
21    that I have a complete administrative record as to the,
22    um, challenged declarations.  That's what I heard him
23    say.  And that -- well I'll stop there.
24          MR. CEDRONE:  Thank you, your Honor.
25          THE COURT:  Lest I clarify my own clarifications.
```

1          Thank you all.

2          We'll stand in recess.

3          (Ends, 11:45 a.m.)

4

5                    C E R T I F I C A T E

6

7          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

8     hereby certify that the forgoing transcript of the

9     record is a true and accurate transcription of my

10    stenographic notes, before Judge William G. Young, on

11    Tuesday, June 2, 2025, to the best of my skill and

12    ability.

13

14

15

16

17    /s/ Richard H. Romanow 06-05-25
      _____
18    RICHARD H. ROMANOW  Date

19

20

21

22

23

24

25