# Exhibit 1



Jessie J. Rossman
Legal Director
(617) 482-3170 x337
jrossman@aclum.org

June 5, 2025

**Via Email**

Re:     Administrative Record Deficiencies

Dear Attorney Ketarpal,

We are writing with regard to deficiencies in the Administrative Record Defendants produced on June 2, 2025. *See* ECF No. 86. We have identified at least four categories of information missing from the record: (1) documents used in the implementation of the Directives, including in the evaluation of grant terminations; (2) documents from the Department of Government Efficiency ("DOGE") and Department of Health and Human Services ("HHS") reflecting their participation in the creation and implementation of the Directives and the selection of grants to terminate; (3) metadata from the documents in the administrative record; and (4) documents discussing the use of artificial intelligence agency decision-making with regards to the Directives and terminations. These categories of information are necessary for a complete Administrative Record, and they should be produced immediately.

1.    Documents Used in the Evaluation of Grant Terminations

The Administrative Record makes clear that there are forms and documents used in the decision to terminate grants that have not been produced. For example, the record includes an email from an NIH Program Officer stating that she was "asked to complete a form indicating whether [a] project was focused on any of the areas that have been identified as low program priority, which includes gender identity, DEI, or environmental justice." NIH_GRANTS_000125. However, no such forms—whether for this or any other project—are currently present in the Administrative Record.

To the extent these forms were used to implement the Directives and/or were used to determine whether grants should be terminated and pending our confirmation after receipt of the transcript of the June 3rd status conference, we believe that this falls under one of the categories that Judge Young indicated that he wanted Defendants to produce as part of the Administrative

Page 2
Administrative Record Deficiencies
June 5, 2025

Record. We request that you produce (1) all iterations and drafts created during the development of these forms; (2) all correspondence surrounding the creation, development, and rollout of these forms; (3) all forms that were completed for the terminations at issue in this case; and (4) any other documents used to evaluate grants' consistency with agency priorities.

2. Documents Reflecting DOGE and HHS's Participation

Plaintiffs have alleged DOGE involvement in NIH grant terminations. ECF No. 1 at ¶ 115; ECF No. 41 at 31 (citing testimony of current and former NIH officials reflecting the same). Improper external influence on agency action is a factor in whether the action is arbitrary and capricious. Further, whether people other than those designated by statute and regulation are involved in determining agency priorities is clearly relevant to Plaintiffs' claims.

Throughout the Administrative Record, there are references to DOGE's and HHS's involvement in the creation of Directives and the selection of grants for termination. *See* NIH_GRANTS_002562 (stating NIH "have been *asked* to terminate the list of approximately 120 grants" (emphasis added)). Through these limited emails, it is evident that DOGE and HHS employees played a much larger role in the creation of Directives and the termination of grants than has been produced in the Administrative Record.

For example, there are several documents suggesting that HHS staff may have played a key role in the creation of the Directives and their implementation. These documents indicate that HHS may have been involved in the following ways: setting "agency priorities" that were incorporated into the Directives (NIH_GRANTS_002929), creating the boilerplate language that was included in termination letters (NIH_GRANTS_002562), developing processes for the termination of awards (NIH_GRANTS_002135), creating termination letter templates (NIH_GRANTS_002469), deciding which grants to terminate (NIH_GRANTS_002488), and drafting the termination letters (NIH_GRANTS_003452). For example, Rachel Riley—who from the record appears to be an official at HHS but from public reporting may also be a DOGE official, *see* Avi Asher-Schapiro et al, *Elon Musk's Demolition Crew*, ProPublica (Feb. 6, 2025) https://projects.propublica.org/elon-musk-doge-tracker/—sent multiple emails the evening of February 28, 2025 to NIH officials with the subject line "Grants for immediate termination today," and included lists of grants that were in turn terminated. *See* NIH_GRANTS_002296-002302. That same day, Matthew Memoli states, "Rachel is trying to work on the letters (see an example attached)[.]" But the record contains no documents reflecting how Rachel Riley (or any individual at HHS or elsewhere) selected those grants. As another example, an email

Page 3
Administrative Record Deficiencies
June 5, 2025

from March 4, 2025 to NIH chief grant management officers states, "I have also added the process for terminating awards based in DEI *as provided to us by HHS*." NIH_GRANTS_002135 (emphasis added); *see also* NIH_GRANTS_003453 ("I will send the specific details from the attached document to the ICs that were impacted by yesterday's termination list provided to us by HHS/ASA."). And a March 24, 2024 email from Matthew Memoli states, "We have been asked to terminate the list of approximately 120 grants by COB today," with no reference in the record about who asked Memoli and the other NIH officials in that email to do so. NIH_GRANTS_002562.

Similar to the emails indicating HHS involvement, the Administrative Record also suggests that DOGE officials may have played a large part in the termination of grants. Currently, the Administrative Record contains eight unique emails from DOGE officials directing NIH officials to terminate certain grants or otherwise indicating their involvement with grant terminations. *See e.g.*, NIH_GRANTS_002469, 003122, 003206, 003511, 003631, 003752, 003820. By way of example, in one of those emails, Brad Smith—a DOGE official—states to Matthew Memoli, "Per our conversation, below are a number of NOFOs that it may be worth your team reviewing to make sure they align with your directive and priorities." NIH_GRANTS_003752. But the record contains no documents reflecting how Brad Smith (or any other official from DOGE or elsewhere) selected those NOFOs. Especially given the scope of the terminations and delays at issue here, it is simply implausible that these eight emails encompass the entire universe of DOGE's involvement as to the Directives or the terminations.

We request that you supplement the record by including (a) all documents reflecting the involvement of any HHS official (including but not limited by Rachel Riley, if she is an HHS official) surrounding the development, creation, and implementation of the Directives at issue in this case including all communications between HHS and NIH or DOGE, and (b) all documents reflecting the involvement of any DOGE official (including but not limited by Brad Smith) surrounding the development, creation, and implementation of the Directives at issue in this case including all communications between DOGE and NIH or HHS.

3. Metadata

In this case in particular, the original metadata behind these documents is an essential part of the Administrative Record by, for example, allowing the parties and the Court to understand when and by whom documents were created. *See* ECF No. 84 at 12 (highlighting Plaintiffs' focus on metadata to

Page 4
Administrative Record Deficiencies
June 5, 2025

indicate that individuals outside of NIH were creating termination language).

By producing the Administrative Record as combined PDFs with very little ESI information included, we cannot determine the metadata of these documents. Furthermore, in producing the native excel spreadsheets, it appears the original metadata was removed from these documents. The absence of metadata renders the Administrative Record incomplete. The metadata, which would include the creators of the document, is relevant to our claims because it could indicate that individuals outside of NIH were exerting improper external influence to ensure that certain grants were terminated.

To that end, we have identified three categories of documents in the Administrative Record for which we are requesting the production of the native files inclusive of the original metadata: (1) excel spreadsheets of grants that either have been terminated, were scheduled to be terminated, or were scheduled to be renegotiated; (2) the Directives and any drafts of the Directives; and (3) all termination letters templates.

4.  Documents Surrounding Artificial Intelligence

The final category of documents encompasses the NIH's use of artificial intelligence ("AI") to implement the Directives. Recent public reporting indicates that, at least in some parts of NIH, every grant must now be fed through an AI tool to screen for references to the termination categories at issue in this suit. *See* Hannah Natanson, *DOGE vowed to make government more 'efficient' — but it's doing the opposite*, Wash. Post (Jun. 2, 2025) https://www.washingtonpost.com/business/2025/06/02/doge-vowed-make-government-more-efficient-its-doing-opposite/. However, no document in the Administrative Record reflects any policies or guidance to use AI for this purpose or otherwise indicates how NIH is using AI to implement the Directives.

Consequently, we request the record be supplemented to include this information.

Plaintiffs respectfully reserve the right to address other deficiencies not raised in this letter, and we look forward to meeting and conferring with you on this later today.

[*signature block on next page*]

Page 5
Administrative Record Deficiencies
June 5, 2025

Sincerely,

Jessie J. Rossman