1              UNITED STATES DISTRICT COURT

2                DISTRICT OF MASSACHUSETTS (Boston)

3                                    No. 1:25-cv-10814-WGY

4
COMMONWEALTH OF MASSACHUSETTS, et al,
5            Plaintiffs
vs.
6
ROBERT F. KENNEDY, JR., et al,
7            Defendants

8
                                     No. 1:25-cv-10787-WGY
9
AMERICAN PUBLIC HEALTH ASSOCIATION, et al,
10           Plaintiffs
vs.
11
NATIONAL INSTITUTES OF HEALTH, et al,
12           Defendants

13
                      * * * * * * * * *
14
                  For Zoom Hearing Before:
15                 Judge William G. Young

16
                        Final Pretrial
17

18                 United States District Court
                   District of Massachusetts (Boston.)
19                 One Courthouse Way
                   Boston, Massachusetts 02210
20                 Thursday, June 12, 2025

21
                      * * * * * * * *
22

23           REPORTER: RICHARD H. ROMANOW, RPR
                   Official Court Reporter
24             United States District Court
        One Courthouse Way, Room 5510, Boston, MA 02210
25                   rhr3tubas@aol.com

```
 1                A P P E A R A N C E S

 2

 3    GERARD J. CEDRONE, ESQ.
      KATHERINE B. DIRKS, ESQ.
 4    PHOEBE LOCKHART, ESQ.
         Massachusetts Attorney General's Office
 5       One Ashburton Place, 20th Floor
         Boston, MA 02108
 6       (617) 963-2282
         E-mail: Gerard.cedrone@mass.gov
 7       For the Commonwealth of Massachusetts plaintiffs
   and
 8    OLGA AKSELROD, ESQ.
      JESSIE J. ROSSMAN, ESQ.
 9       American Civil Liberties Union Foundation
         125 Broad Street
10       New York, NY 10004
         (212) 549-2659
11       Email: Oakselrod@aclu.org
         For the APHA plaintiffs

12

13    THOMAS PORTS, JR., ESQ.
         DOJ-Enrd
14       P.O. Box 875
         Ben Franklin Station
15       Washington, DC 20044
         (202) 307-1105
16       Email: Thomas.ports@usdoj.gov
   and
17    ANUJ K. KHETARPAL, ESQ.
         United States Attorney's Office
18       1 Courthouse Way, Suite 9200
         Boston, MA 02210
19       (617) 823-6325
         Email: Anuj.khetarpal@usdoj.gov
20       For all defendants

21

22

23

24

25
```

1       P R O C E E D I N G S

2       (Begins, 11:00 a.m.)

3       THE CLERK:  The Court will hear Civil Action

4  Numbers 25-10787, the American Public Health

5  Association, et al versus the National Institutes of

6  Health, et al, and 25-10814, the Commonwealth of

7  Massachusetts, et al versus Robert F. Kennedy, Jr., et

8  al.

9       THE COURT:  Good morning.  This is a hearing held

10  at your request on our zoom platform.  This is the final

11  pretrial conference in this case held pursuant to

12  Federal Rule of Civil Procedure 16.

13       This hearing is open to the public.  If any member

14  of the public is present, I remind you you must keep

15  your microphone muted and that the rules of court remain

16  in full force and effect.  Specifically, that is to say

17  there is no taping, streaming, rebroadcast, screen

18  shots, or other transcription of these proceedings.

19       These proceedings are taken down by our Official

20  Court Reporter, Rick Romanow.  I have law clerks on the

21  line.

22       Because there are a number of attorneys, I think

23  the intelligent way to proceed is, um, when I call upon

24  plaintiffs or intervenors or defendants, um -- well

25  they're not intervenors, the second case, it will be

1    clear, if you wouldn't, um, take the moment to introduce

2    yourself as a speaker representing the group that you

3    represent, that way the Court Reporter may have a

4    complete record.

5         I say to counsel, and in gratitude, that you've

6    anticipated this hearing in large measure and I don't

7    think it ought take too long.  Here's what I'm looking

8    to have established.

9         I want to be clear on what the record is upon

10   which decision will be made.  I want to be clear as to

11   the procedure that we will follow on Monday.  And then,

12   off the record, what we'll do is close this hearing down

13   and, um, invite only counsel back for a private hearing,

14   I want to raise the possibility of settlement.

15        So let me start, because you have informed me, um,

16   with my statement as to what I think the record is.  And

17   there's an issue here and the problem is a problem of

18   the Court, but I think I can talk my way through it, and

19   I will ask.

20        So I understand that the record is the, um,

21   following.  The record is certainly the administrative

22   record as it has been provided by the various

23   defendants.  The plaintiffs have provided various

24   materials beyond that record.  The defense has

25   appropriately and timely objected and filed a memorandum

1    on that point.  Here's where I'm embarrassed.  We can't

2    read it because we're having trouble with our CMECF.

3         But from the tenor of our discussions, I rather

4    imagine what it says, and while I'm not going to launch

5    into some oral argument about it, let me proceed, um,

6    thinking I know what the defense has to say about it and

7    how I propose to treat it.  You don't have to agree to

8    this, but, um, how I propose to treat it.

9         So I assume now that the record is the, um --

10   includes the record provided by the defendant, what they

11   say is the administrative record in an administrative

12   procedure case.  I think everyone agrees on that.  The

13   plaintiffs want to put additional materials before me.

14   I propose to treat those materials as evidentiary

15   materials, that is to say, I recognize that the defense

16   does not agree that I should consider them at all,

17   that's in essence a relevance objection, relevance in

18   the sense of legal materiality in an administrative

19   procedure case.  I honor that, honor it in the sense

20   that I recognize that, and when it comes to the written

21   opinion, I'm going to have to say something about that.

22        In addition to that, I imagine the defense says

23   that even if I were to look at these things, again they

24   are not persuasive, and I recognize that.  And I, um,

25   will allow, in the argument, argument as to why they're

1    not persuasive in a legally-relevant sense or not

2    persuasive factually even without any particular

3    affidavits or counteraffidavits, the defense just

4    disagrees, and that's fine.

5        Where I need to give the defense the chance -- and

6    I haven't read the -- I haven't read the opposition,

7    you'll recognize, but where I need to give the defense

8    the chance, if they say things like "That's not true" or

9    "The matter is -- that's just not authentic, that didn't

10   happen," um, well I need to give the defense, and the

11   plaintiff, a chance to figure out what we're going to --

12   how we're going to address that.  I don't -- I was going

13   down the line that I would be able to have extensive

14   oral argument on Monday and, um, I am already working

15   with the record I have.

16        So let me stop, the first round, on the record and

17   talk plaintiffs in the first case, have I got this right

18   on the record, do you agree with this way of proceeding?

19        MR. CEDRONE:  Good morning, your Honor, Gerard

20   Cedrone from the Massachusetts Attorney General's Office

21   on behalf of the States in the '814 case.  I think we

22   essentially agree, and let me just say a few things to

23   make sure I factor all the nuances.

24        So for Monday, I think that the plaintiff states

25   generally agree that the question of the merits of these

```
 1   first-phase issues, so were the challenged directives
 2   lawful, um, and were the terminations lawful?  That can
 3   proceed on the administrative record.  I think with the
 4   caveat that we produced a demonstrative spreadsheet in
 5   May, granted it had been terminated, the defendants
 6   responded with issues as to some of them, we're working
 7   through them and our client to produce a revised
 8   spreadsheet tomorrow.  But I think by and large we agree
 9   that on the merits, um, the Court is in a position to
10   decide, on the administrative record, whether the
11   directives are lawful, whether the terminations are
12   lawful, and whether the, um, types of vacatur and
13   rather, APA remedies, are appropriate in this case.
14         The only --
15         THE COURT:  Go ahead.
16         MR. CEDRONE:  That then leaves the question of the
17   exhibits, which at least in the plaintiffs states case
18   mainly goes to the availability of injunctive relief.  I
19   think there may be some minor issues that those
20   declarations are relevant to, but the main issue any
21   declarations go to is the propriety of injunctive relief
22   and specifically irreparable harm.
23         On that issue we, um, we don't take the defendants
24   so far to have disputed, as your Honor put it, whether
25   something is true or not or the authenticity of
```

something or not, we take the defendants to be disputing
whether we meet the legal standard for irreparability or
whether an injunction is even available in an APA case,
which is why we propose, and we understand the
defendants don't have to accept this, but we propose a
case-stated procedure for that question of irreparable
harm. Essentially we put forward our declarations, we
don't understand the defendants to dispute the --

THE COURT: Well let me stop you and, um --

(Court Reporter Zoom Freeze.)

(Off the record.)

(Back on the record, 11:45 a.m.)

THE COURT: We're back in the public forum. I've
made whatever statements I need to make. We were
hearing Ms. Akselrod and I interrupted her.

So, Ms. Akselrod, what I had to say is of no
moment, but I did interrupt you. And why don't you pick
up.

MS. AKSELROD: Thank you, your Honor. So just a
couple of points.

The first question was, um, the position of the
APHA claims with regard to how to deal with the extra-
record evidence, and we are in agreement with, um, with
your Honor's, um, description of how to proceed with
regard to that.

1    THE COURT:  Fine.

2    MS. AKSELROD:  There is a separate question, um,

3    of the motion to complete, that was what the filing

4    was -- the defendants' filing this motion this morning,

5    excuse me, and we are prepared to discuss that, um,

6    motion now, if your Honor is ready for that.

7    THE COURT:  Um, I am not ready for it.  That's not

8    what I planned to deal with.  I'll deal with that on the

9    papers, once I've reviewed the papers, and I will enter

10   an order thereon, promptly.

11   So now let me turn to Mr. Ports, and introduce

12   yourself, Mr. Ports, I take it you're the one who's

13   going to speak.  You understand my question, the record

14   I have before me and how I am going to treat it.  What

15   is the public officials' position?

16   MR. PORTS:  Yes, your Honor, and thank you, and

17   good morning, Tom Ports from the U.S. Department of

18   Justice.

19   So before -- in order to answer the question, I

20   believe we need to back up a little bit and talk about

21   what we understand is -- well there's a couple of

22   things.  And first there's the matter of the record and

23   the Court's review should be on the record.  So we agree

24   with that.  We agree that the record is complete and

25   that we have submitted it.

1      THE COURT:  Well there appears -- and Ms. Akselrod

2  raised something and I cut her off, because honestly I'm

3  not ready and I'm going to review the filings with

4  respect to it.  But, um, I suppose I have to, um, deal

5  with this motion to complete the record, one way or

6  another, and I will.  But once I've done that, then I

7  hear you say, um, though your rights may need to be

8  reserved, the record, as far as administrative record,

9  will be before the Court for a decision.  Right?

10      MR. PORTS:  Correct, your Honor.  Assuming the

11  Court denies the motion to complete, then the record

12  will be complete on Monday.

13      Additionally the defendants have been ordered to

14  file the record for the APHA case by Monday.  We expect

15  and intend to file that tomorrow, so that the Court and

16  the plaintiffs have it, so that the records in both

17  cases, for all of the Phase 1 claims, are complete and

18  prepared at that time.  So that's our intent with regard

19  to the record.

20      THE COURT:  Thank you.

21      MR. PORTS:  Now we -- as far as extra-record

22  evidence, there's been no motion -- although there's a

23  motion to complete the record, there is no motion to

24  supplement the record.  So plaintiffs have not contended

25  that --

1     THE COURT:  What about these affidavits to which

2  they make reference?

3     MR. PORTS:  Yes, your Honor, so I've got two

4  points on those affidavits.  Those affidavits, our

5  position is they should not in any case be considered

6  for a ruling on the merits of whether this -- these

7  alleged agency actions were arbitrary and capricious or

8  otherwise.  However, there are some facts that

9  plaintiffs -- that would not necessarily fall under that

10  rule that plaintiffs would need to prove.

11     In particular, if they want to -- if they intend

12  to introduce any evidence to prove that they had

13  standing to challenge the withdrawal of a notice of

14  funding opportunity, now the fact that they want to say

15  that, you know, "We think we have standing because we

16  applied for this," that would be evidence that they

17  would need to introduce, but is not included in the

18  record, and is not part of whether the decision was

19  reasoned, so it is somewhat separate from that rule.

20     Additionally, if plaintiffs intend, as they said

21  they do, to ask the Court to enter a permanent

22  injunction, they need to prove that they're entitled to

23  that relief, which requires them to prove that they have

24  suffered harm that is not within the administrative

25  record, that is extra.

1    On that, as Mr. Cedrone said in his filings,

2    defendants are not, um -- we do not agree to have the

3    Court accept and consider affidavits without the

4    opportunity to cross-examine the declarants.  These are

5    many many affidavits that follow --

6        THE COURT:  No, I understand.  I understand.  I

7    understand what you say.  So, um -- and more than

8    understand it, I accept it.  What you're saying is "We

9    want the right of first examination.  We want, um,

10   because" -- in any event, I don't see a permanent

11   injunction here.  Here's the -- here's the worst that

12   can happen to the government, the public officials, it

13   seems to me, that I enter a declaration that these --

14   for whatever reason, these directives are, um, are void

15   and have no effect, and therefore they, um, because it

16   would have to be based on harm to the defendants, these

17   grants already, um, either available for obligation and

18   funded by the Congress, have to be funded, have to be

19   the monies allocated in this fiscal year to be paid and

20   have to be paid now promptly.  Again I'm not saying I'm

21   going there, but that's the worst that can happen to the

22   government officials in terms of substance.

23       Now that's not a permanent injunction, that just

24   says how monies already appropriated by the Congress

25   will be disposed of rather than letting the fiscal year

1    run out and have them revert to the general fund.

2         Now you say before I ever get there, even if I

3    rule that the administrative action is arbitrary and

4    capricious, you want the opportunity to cross-examine

5    witnesses on the harm to the grant recipients.

6         Do I understand?

7         MR. PORTS:  Respectfully, no, your Honor, it is

8    only with respect to -- we don't understand that

9    plaintiffs are offering witnesses for that purpose with

10   regard to arbitrary and capricious --

11        THE COURT:  No, no, I didn't -- feel free to tell

12   me I don't understand, but I think I understand that.  I

13   can decide arbitrary and capricious on the record as

14   we -- the administrative record as I ultimately order it

15   to be, but to enter an injunction which says, "Now go

16   ahead and pay out the funds that Congress has

17   appropriated, and more than that, pay them to these

18   grant recipients in the manner that you have during this

19   fiscal year," you say you want to hear evidence?

20        MR. PORTS:  Yes, your Honor, it is our position

21   and understanding that to enter a permanent injunction,

22   the Court would need to find evidence of irreparable

23   harm.

24        THE COURT:  I think you're right.  And I -- and I

25   think that's so.  I just don't see it's a -- permanent

injunctions are -- I think of "permanent" in terms of

time.  I mean I suppose, if -- and I don't really see

this to be argued, and I'm not pressing to go there, but

if I thought this stuff was discriminatory, especially

racially discriminatory, um, I -- the law is very clear

on that, the Constitution's very clear on that.  So I

could enter some injunction without limited time as to

that, as to these plaintiffs anyway.  But, um, as to

these grants, they -- they only deal with funds that

Congress has appropriated in this fiscal year, that's

the urgency.  But focusing on that, not whether I call

the injunction "permanent" or not, you want to see

evidence of harm, right?

MR. PORTS:  Respectfully, your Honor, we don't

believe that a permanent injunction is appropriate, we

believe that --

THE COURT:  Please.  Please.  This is Rule 16.  I

know you don't.

MR. PORTS:  Right, your Honor.

THE COURT:  You talked about wanting to cross-

examine.  I love cross-examination.  You know that's

fine.  Maybe they will.  In fact my instincts are that

they probably should put on evidence of that.

Now -- but you're not -- when I ask you, that's

what you want?  It's a softball question.  Don't I

1  understand what you're saying, don't you want to hear

2  from these witnesses?

3      MR. PORTS:  Yes, your Honor.  If the Court

4  believes that it may rely on their testimonies, and

5  plaintiffs want to present it, yes, then we want the

6  opportunity to cross-examine those witnesses.

7      THE COURT:  You want to say, and you're telling

8  me, that, um -- because you say it's your right, I,

9  absent that opportunity, I, um, cannot consider

10  affidavits addressed to that issue.  Right?

11      MR. PORTS:  Yes, your Honor, correct.

12      THE COURT:  All right, I follow that.  I follow

13  that.  And, um, that is a matter.  Let me go back to

14  Mr. Cedrone.

15      What about that?  I mean it seems to me that

16  you're going to have to prove it.  We don't usually do

17  cases on, um -- well I can see that in two steps.

18  There's no need to get there unless I rule on the

19  administrative record that the conduct was arbitrary and

20  capricious.  So, um, how do you -- but it does seem to

21  me that you don't get any injunction, though it's

22  crucial that an injunction enter promptly, if you were

23  to win that first point.

24      When are you going to put on that evidence?

25      MR. CEDRONE:  So let me take each of those points

```
1   in turn, first the arbitrary and capricious and the
2   record.  I think we -- if I'm understanding correctly,
3   are all circling the same point, which is that the
4   administrative record allows the Court to decide
5   arbitrary and capricious, and also to enter APA remedies
6   like vacatur, like setting aside final agency actions,
7   which courts do all the time based on the record.
8         THE COURT:  I agree.
9         MR. CEDRONE:  So we can get that form of final
10  relief.
11        On the question of injunctive relief, which we are
12  seeking a permanent injunction with respect to
13  constitutional claims and other issues, I think I agree
14  there too that there are issues that can be resolved
15  before wading into any factual disputes, like the
16  defendants' legal objections to the availability of
17  injunctive relief, or other legal issues they raised in
18  the briefing, and that we think will be fully briefed by
19  Monday.
20        As to how to present this evidence and when?  I
21  think we are very flexible and able to move quickly,
22  consistent with our desire for prompt relief.  We
23  hadn't, um, you know candidly until just this past week,
24  understood there to be a dispute on the facts.  But we
25  are flexible and open to conferring with the government
```

1    to come up with a procedure that makes sense.

2           I think one complication is, the defendants, the

3    federal government has taken the position in their

4    opposition to preliminary injunctive relief, that there

5    needs to be proof as to every plaintiff and maybe even

6    every university for states, you know like California,

7    to have -- the University of California and California

8    State University.

9           So we -- you know we are flexible, we think it

10   makes sense to work out with the other side some way to

11   do this on a representative basis or a -- you know we

12   don't have really preconceived --

13          THE COURT:  Thank you, Mr. Cedrone.

14          Ms. Akselrod, in essence you agree with that,

15   right?

16          MS. AKSELROD:  Yes, your Honor.  We'd be prepared

17   to put on witnesses with regard to the those issues,

18   outside the lawfulness of the directives, at a later

19   date that we can work out after we confer.

20          THE COURT:  Fine.  Fine.  Fine.

21          MS. AKSELROD:  If I may, your Honor?  Just one

22   clarification, however, which is that, um, the defense

23   has raised, um, non-merit issues, not only with regard

24   to harm and relief, but also with regard to standing.

25   Our position would be that the June 16th hearing should

1  go forward on the AR with regard to lawfulness, and that

2  all non-merits issues, not only harm, but also

3  jurisdictional issues, such as standing, that they are

4  contesting, also be resolved in that later proceeding.

5       THE COURT:  No, you can't -- you can't resolve,

6  um -- that puts the cart before the horse.  Only people

7  who have standing are going to be heard here.  So we're

8  going to have to resolve the issue of standing.  I

9  hadn't thought, I will tell you, that there was much

10 dispute about that.  And while I think it makes sense to

11 go forward on Monday on the issue -- on the APA issues

12 of, um, arbitrary and capricious action, I do think

13 that.  But, um, the Court -- it's only going to

14 entertain that from people who have standing.

15      Now to the extent -- I have to say, I think that

16 is, on the undisputed record, a legal issue, and so it

17 seems to me I can resolve that by, um, argument and

18 ruling -- um, maybe not on Monday, but at an appropriate

19 time.  So I'm holding that -- insofar as it's a legal

20 issue, I'm holding that into the hearing on Monday.

21      MS. AKSELROD:  Thank you, your Honor.

22      THE COURT:  Now, um, so I'm actually, and I

23 appreciate counsel, I'm informed by your several

24 positions, and I propose that there is the second issue

25 that I need to handle, and it's this.  I propose that,

um, on Monday, um, we have oral argument.  I would

propose oral argument, given that I plan to be very

conversant with the administrative record, I propose

that oral argument not exceed 45 minutes a side, and,

um, further I propose -- and this would be my normal

practice, and I -- this is how I normally do it in a,

um, jury-waived case.  I recognize that, um, we will not

be arguing on Monday injunctive relief, injunctive

relief beyond APA remedies, which do not derive for

injunctive relief.

So at the end of the argument, having heard my

questions and the like, we will recess.  I will ask you,

at that time, um, do you want me to stay my hand in, um,

resolving this issue, so that you folks can confer and

conceivably resolve the matter.  If you both did, then I

would, um, then I would hold off as you jointly, um,

recommend it.

If any of you did not, um, I would retreat to

chambers candidly, and think, um, talk with my law

clerks candidly, and see whether recognizing that this

is a, um, case that originated with the claim for a

preliminary injunction, whether there was anything I

could say, um, that would, um, obviate the need for

further hearing, things looking bad for the plaintiff,

or, um, enhance the need for a further hearing on

1    injunctive relief.  I don't know.  I'm working.  I'm not

2    ready.  I'll be ready Monday.  But that was the second

3    issue I wanted to raise here.  And so following the same

4    procedure, we'll start with Mr. Cedrone, that's how I

5    normally do it in a jury-waived case.

6        What about the -- oh, one thing I didn't say is,

7    um, I always follow the Massachusetts rule that the

8    party with the burden of proof argued last, but that

9    won't work here, because that works where the judge has

10   presided over an actual trial and the judge has heard

11   all the evidence.  Here, while I say I'll be ready, and

12   I will, if you haven't heard witnesses, it depends on my

13   reading of the record.  So really you need to go first,

14   both plaintiffs need to go first and make your

15   arguments, and then we'll give Mr. Ports equal time to

16   rebut those arguments and point out things he needs to

17   point out.

18       So what do you think of those proposals, those

19   time limits, that procedure?  Mr. Cedrone.

20       MR. CEDRONE:  I think that all makes sense, both

21   the timing, the issues to be covered, and having the

22   plaintiffs go first.  This is -- Monday's proceeding

23   will be on a closed record, um, it's similar to almost

24   an appellate argument, so it makes sense for the, you

25   know, plaintiffs to --

1        THE COURT:  It is, but, um, unlike most appellate
2    courts on which I have heard or even been privileged to
3    sit, I'm giving you longer to argue.  The case warrants
4    it.
5        THE COURT:  Mr. Ports, what do you think?
6        MR. CEDRONE:  Can I just ask you?  Would you --
7    would you like the plaintiffs -- for the 45 minutes,
8    were you envisioning 45, 45, 45?
9        THE COURT:  (Laughs.)  No.  No, I was envisioning
10    you splitting it up.
11        MR. CEDRONE:  All right.
12        THE COURT:  But you can push back on that.  It
13    just seems --
14        MR. CEDRONE:  I think we ought to --
15        THE COURT:  At a certain point, more lengthy
16    argument is less persuasive than more -- just saying
17    "Look at this, Judge, look at that," at least that's
18    been my experience.  And, um --
19        MR. CEDRONE:  We have -- I'm sorry, I didn't mean
20    to cut you off.
21        THE COURT:  No, I -- I'm both familiar with
22    argument like that, but that's not particularly helpful.
23    My duties -- whether it's argued or not, things are not
24    waived here.  My duty is to give a comprehensive, um,
25    written opinion.  And when I hold out the possibility,

1   and that's all it is, of speaking later in the day or in

2   the next few days, or some truncated order, um, that's

3   because I am sensitive to the needs for speed here.  But

4   there has to be a comprehensive written opinion here

5   and, um, that's going to take a while.  But the time is

6   ticking against you in this fiscal year, no one is more

7   sensitive to that than I.

8        Does that -- do you understand where I'm coming

9   from on this?

10        MR. CEDRONE:  I do, and there's obviously been

11   voluminous briefing and I think the most helpful thing

12   we can do Monday is answer your Honor's questions.  So I

13   think the time limits that your Honor would find useful

14   are, um, will work for us, without treading on --

15        THE COURT:  Ms. Axselrod, you agree?  Are you

16   okay?

17        MS. AKSELROD:  Your Honor, if the Court was

18   willing to provide the plaintiffs with a little more

19   time since there are --

20        THE COURT:  We'll give you an hour, but you split

21   it.

22        MS. AKSELROD:  Wonderful.  Thank you, your Honor.

23   And just one question whether --

24        THE COURT:  But an hour is not an invitation to

25   take the hour, it's that the Court will be available to

1 hear you for an hour.

2     Go ahead.

3     MS. AKSELROD:  Of course, your Honor.  And one

4 question?  Whether the Court will also allow rebuttal,

5 for the plaintiff?

6     THE COURT:  No.  Nope.  No rebuttal.

7     MS. AKSELROD:  Thank you.

8     THE COURT:  Okay.

9     Mr. Ports, how does this suit?

10     MS. PORTER:  One clarification, your Honor.  It

11 was defendants' understanding of -- well it's the

12 defendants' position that the plaintiffs need to provide

13 -- or that all parties need to provide competent

14 evidence, and so it was our intent to present, I guess,

15 three things.  We're going to ask for judicial notice of

16 something for a mootness purpose.  We may seek to

17 similarly, um, move in an additional party opponent,

18 which doesn't necessarily require introducing evidence.

19 And the third thing is --

20     THE COURT:  I didn't understand the second?  Move

21 in what?

22     MR. PORTS:  Sorry.  I didn't need to discuss the

23 second.  Sorry.  Then just two things, your Honor, not

24 three.  I apologize.

25     THE COURT:  Okay.

1    MR. PORTS:  So, Number 1, um, for mootness

2    purposes, which is mentioned in our brief, we would

3    intend to ask for judicial notice of some Federal

4    Register Notices about holding meetings.  And then the

5    second thing, as a rebuttal argument about, um, the

6    cancellation of all grants regarding certain activities,

7    we would similarly -- we intended to introduce as, um, a

8    self-authenticating business record, the fact that NIH

9    records demonstrated that certain grants continued to be

10   active.  And so we intended to move those as sort of

11   competent, self-authenticating nonhearsay evidence into

12   the record at the trial.  That was our expectation.  If

13   the Court does not want that or like us to file a --

14        THE COURT:  No, I'm fine with that.

15        MR. PORTS:  Okay, thank you.

16        THE COURT:  I'm fine with that, um, but it comes

17   out of your hour and --

18        MR. PORTS:  Understood, your Honor.

19        THE COURT:  -- I'll deal with it.  But the two

20   things that you mentioned make sense to me and I -- I

21   would like to hear them.

22        MR. PORTS:  Thank you, your Honor.

23        THE COURT:  Now then there's only one other thing

24   that I'd like to raise in this, um, final pretrial

25   conference, because we know what we're doing on Monday.

And at the -- and not counting against the two hours for
oral argument, we'll see whether it's worthwhile
discussing when or even if we need to present, um, live
evidence or representative evidence and the like?  I'm
perfectly amenable to that.  That will be discussed on
Monday.

There's one other thing that you're quite right,
you already raised it, and in fact it may be in the
schedule, and again I'll go around in the same order,
but there's a Phase 2 here.  And, um, there's this
schedule, I think, or you've at least mentioned, when we
would talk about case management for Phase 2.

Mr. Cedrone, is that already scheduled or, um --
it would be wise now, with my schedule and Ms. Belmont
here, to revisit that, not substantively, but just when
are we going to talk about that?

MR. CEDRONE:  I believe, your Honor, where we left
things is there's a schedule for the government to
provide, um, a record on the second phase issues and
then for us to litigate those.  I think it's open-ended
beyond that.  Perhaps it makes sense for us to review
where the schedule stands now, chat with Mr. Ports and
Mr. Khetarpal, and arrive on Monday with anything that
needs to be filled out now beyond what we've already
scheduled.

1      THE COURT:  Again that makes perfect sense to me.

2  My focus on Monday is going to be on the administrative

3  record and its implications and the Administrative

4  Procedure Act.

5      Ms. Akselrod, you agree?

6      MS. AKSELROD:  Yes, your Honor, that works for the

7  APHA plaintiffs as well, um, with regard to Phase 2.

8      THE COURT:  Thank you.

9      Mr. Ports, you have the same view?

10      MR. PORTS:  Your Honor, I do recall that there is

11  a schedule in place for Phase 2 already.  So the Court

12  has ordered that defendants will file any motion to

13  dismiss on Friday.  We then have until early July to

14  file an administrative record for Phase 2, followed by,

15  um, if plaintiffs agree that the case can proceed on the

16  record filed, there would be cross-motions for summary

17  judgment on Phase 2.  And if they do not, they will file

18  motions to complete or supplement following our filing

19  of the administrative record.  So things are already

20  scheduled.

21      THE COURT:  Thank you.  Thank you, Mr. Ports, I'm

22  assuming you read that right.  I didn't intend, in any

23  way, to alter it, that's what we had discussed and

24  agreed, I simply don't want to lose sight of it.

25      Now you people have been helpful throughout, and I

1    want to say that sincerely.  I'm going to go around one

2    more time simply asking for questions.  Recognizing that

3    I have the duty to promptly, um, rule on this motion to

4    complete the record.  But other than that, I'll be

5    getting ready for Monday.

6        Mr. Cedrone, any questions?

7        MR. CEDRONE:  I don't think so for the state

8    plaintiffs, although I'll pause if there are any counsel

9    of record in other states on the line who want to remind

10    me of something I'm forgetting.

11        (Silence.)

12        THE COURT:  Being mute, Ms. Akselrod, any

13    questions?

14        MS. AKSELROD:  Yes, your Honor, I have two

15    questions.

16        One is that, um, there has been some discussion

17    amongst the parties about the length of reply and how

18    the reply briefs should be -- should be submitted to the

19    Court.  Currently I believe each side has 10 pages, and

20    that's just something that wasn't decided.

21        We would be fine with expanding that.  We would be

22    fine with submitting 15 pages, if the defense, um,

23    agrees that --

24        THE COURT:  I'm not resolving that.  We're fine.

25        MS. AKSELROD:  Okay, that's fine.

1    Your Honor, the second question, um, is we have

2  not until today received notice of these exhibits that

3  the defense intends to offer on Monday and, um --

4    THE COURT:  Well I expect him to sit down with you

5  and tell you what they are.  Again, you can work that

6  out.

7    All right, Mr. Ports, any questions?

8    MR. PORTS:  Um, yes, your Honor, I have three, um,

9  three housekeeping matters.

10    First, the U.S. Attorney's Office, while we have

11  been speaking, should have printed and sent down to the

12  Clerk's Office copies of the briefing, um, since the

13  Court can't access CMCF.  The motion to complete

14  briefing should be in the Clerk's Office, a courtesy

15  copy.  That's the first matter.

16    Second, at the last hearing the Court asked the

17  parties to weigh in on whether "Grant Watch" could be

18  considered as a learned treatise?  Defendants did look

19  into that and it appears to be a crowd-sourced website

20  with unverified and apparently unverifiable sourcing and

21  --

22    THE COURT:  I didn't, you misspeak, I never called

23  it a "learned treatise."

24    MR. PORTS:  I apologize, your Honor.

25    THE COURT:  I called it under 803(17), and you can

argue that on Monday.  But it seems to be a place where people go, of all sorts.  I understand that.  Maybe it's -- maybe it's nothing more than Wikipedia.  But, um, this is a complex matter.  If you think I cannot consult it even, you're open to argue that on Monday.

What other questions?

MR. PORTS:  Thank you, your Honor.

And the last one was -- and I understand if you, um, it's perfectly acceptable if you don't want to hear it, but as it stands, the defendants are to file two separate 10-page oppositions for overlapping issues.  We wanted to offer to the Court to combine them.  But if the Court prefers they remain separate, for page-limit purposes, we can leave them separate.

THE COURT:  Honestly I'm not, um -- I'm reading the materials I have.  I have complemented you for the areas where you, um, agree.  I express sincerely my respect for a zealous advocacy.  The Court need not resolve matters like this.  You people can resolve these matters.  And, um, my job is to be ready on Monday and to resolver once substantive motion, which I will do.

Always a pleasure to see you all, even if I haven't heard you all.  And, um, absent a phone call to Ms. Belmont in the interim, we will start on Monday. Even if productive discussions ensue, this Court's going

1    ahead on Monday.  And I do thank you.

2          We'll stand in recess.

3          (Ends, 12:15 p.m.)

4

5                    C E R T I F I C A T E

6

7          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

8    hereby certify that the forgoing transcript of the

9    record is a true and accurate transcription of my

10   stenographic notes, before Judge William G. Young, on

11   Thursday, June 12, 2025, to the best of my skill and

12   ability.

13

14

15

16
     /s/ Richard H. Romanow 06-13-25
17   _____
     RICHARD H. ROMANOW  Date
18

19

20

21

22

23

24

25