**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-10814-WGY |
| AMERICAN PUBLIC HEALTH ASSOCIATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL INSTITUTES OF HEALTH, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-10787-WGY |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR A STAY OF THE COURT'S JUNE 23 PARTIAL JUDGMENTS

Defendants respectfully seek a stay pending appeal of the Court's June 23, 2025, orders and judgments, or for a stay of at least 14 days so that Defendants may seek a stay pending appeal from the First Circuit. The U.S. Solicitor General has authorized appeal of both partial final judgments, and Defendants will file notices of appeal promptly.

In ruling that this Court, not the Court of Federal Claims, has jurisdiction to consider Plaintiffs' claims, this Court recognized that it was "in the somewhat awkward position of

1

agreeing with the Supreme Court dissenters," in a decision where the Supreme Court stayed pending appeal a district court decision on grant terminations. States Doc No. 105 at 9-10. In so ruling, this Court concluded that retaining jurisdiction was nonetheless more aligned with then-prevailing First Circuit precedent. *See id.* The acknowledged "somewhat awkward position" warrants a stay until the First Circuit can rule.

In its June 23 partial final judgments, the Court vacated and set aside the Challenged Directives and resulting grant terminations, requiring Defendants to restore grant terminations and non-renewals identified on a list submitted by Plaintiffs. Restoring the grant terminations and non-renewals will result in millions of dollars irrevocably flowing out of the U.S. Treasury. Defendants are in the process of complying with the partial final judgment. But taking that step means grantees can immediately begin incurring and drawing down expenses. Once those funds are drawn, Defendants will have little-to-no recourse to recover them, even if Defendants prevail in this litigation. And, respectfully, Defendants are very likely to prevail at least on their Tucker Act jurisdictional argument.

The relief ordered by the Court is beyond its power to grant because it lacks jurisdiction over the claims raised. As a result of this Court's determination that it has jurisdiction, grantees will have immediate access to tens of millions of dollars to spend on grants that the Director of NIH has determined are contrary to NIH's research priorities and policy goals, and which contracts NIH terminated. In rejecting Defendants' arguments, this Court recognized that it was agreeing with a recent Supreme Court dissent over the majority. Under these circumstances, the Court should stay its orders pending appeal.

## BACKGROUND

APHA Plaintiffs filed this suit on April 2, 2025. Complaint, *American Public Health Association v. National Institutes of Health*, 1:25-cv-10787 (D. Mass.) (docket hereinafter referred to as "APHA Doc"). State Plaintiffs filed their suit on April 4, 2025. Complaint, *Massachusetts v. National Institutes of Health*, 1:25-cv-10814 (D. Mass.) (docket hereinafter referred to as "States Doc"). Both sets of plaintiffs allege that, starting over a month prior to their filing, NIH paused the grant review process and began unlawfully terminating grants. Plaintiffs alleged that these terminations and delays emanate from a variety of "Challenged Directives" issued by various staff at NIH. State Plaintiffs initially moved for a temporary restraining order. States Doc No. 8. But following the Supreme Court's ruling in *Department of Education v. California*, 145 S. Ct. 966 (2025) ("*California*"), Plaintiffs withdrew that request, amended their complaint, and moved for a preliminary injunction. States Doc Nos. 58, 59. After briefing and a hearing on Tucker Act jurisdiction, the Court issued an opinion holding that it had subject matter jurisdiction to hear Plaintiffs' claims. States Doc. No. 105. The Court reached the same decision in the APHA case. APHA Doc No. 77.

Thereafter, the Court held a case management conference on May 13, 2025. *See* States Doc No. 109. The Court decided to consider Plaintiffs' allegations in two phases, with the first phase considering the grant terminations. States Doc No. 109. It also "collapsed further hearing on a preliminary injunction with trial on the merits" in an effort to resolve the case "at the earliest possible date." May 13 Tr. at 29 ¶ 5-13.

On June 3, 2025, the Court held a status conference in which it consolidated the proceedings in *American Public Health Association v. National Institutes of Health*, 1:25-cv-

10787 (D. Mass.), with *Massachusetts v. National Institutes of Health*, 1:25-cv-10814 (D.

Mass.). *See* States Doc No. 119.

Following timely filing the administrative records, briefing, and a June 16, 2025 hearing

on the merits, the Court ruled orally from the bench that it intended to enter judgment for

Plaintiffs. See States Doc No. 143; APHA Doc No. 121. On June 23, 2025 the Court entered

partial final judgments for phase 1, holding that the "Challenged Directives" were arbitrary and

capricious in violation of 5 U.S.C. § 706(2)(A). States Doc No. 151. It then ruled that the

"Resulting Grant Terminations" were also arbitrary and capricious in violation of 5 U.S.C.

§ 706(2)(A), and it vacated and set aside each identified termination. States Doc No. 151; *see*

*also* APHA Doc No. 138 (same)

## LEGAL STANDARD

"[T]he factors regulating the issuance of a stay are . . . (1) whether the stay applicant has

made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will

be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v.*

*Braunskill*, 481 U.S. 770, 776 (1987).

## ARGUMENT

### I.    Defendants are likely to succeed on the merits.

In ruling that the Court has jurisdiction, the Court appeared to note that its exercise of

jurisdiction presented a close and arguably unsettled question. The Tucker Act confers exclusive

jurisdiction on the United States Court of Federal Claims to hear cases involving express or

implied contracts with the United States which exceed $10,000. 28 U.S.C. § 1491(a)(1); *see*

*Tortorella v. United States*, 486 F. Supp. 2d 159, 161 (D. Mass. 2007); *Burgos v. Milton*, 709

4

F.2d 1, 3 (1st Cir. 1987). Therefore, "the Tucker Act impliedly forbids" the bringing of "contract actions" against "the government in a federal district court" under the APA. *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004); *see also Glaskin v. Klass*, 996 F. Supp. 67, 72 (D. Mass. 1998). This jurisdictional divide ensures that contract claims against the government are channeled to the court that has "unique expertise" in that area. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

In *California*, the Supreme Court addressed this issue in the same context in which Plaintiffs' claims arise: grant terminations. 145 S. Ct. 966. The Supreme Court explained that the government is "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Id.* at 968-69. Instead, according to the Supreme Court, suits seeking relief like that sought by the *California* plaintiffs—that is, "orders to enforce a contractual obligation to pay money"—belong in the Court of Federal Claims. *Id.* at 969.

Here, the Court's ordered relief in this case closely mirrors the relief granted by the district court and stayed by the Supreme Court in *California*. *Compare California v. U.S. Dept. of Ed.*, --- F.Supp.3d ----, 2025 WL 760825 at *5 (D. Mass. Mar. 10, 2025) ("Defendants are temporarily enjoined from . . . maintaining . . . the termination of any previously awarded . . . grants for recipients in Plaintiff States, . . . such as suspension or withholding of any funds approved and obligated for the grants") *with* States Doc No. 151 ("The Resulting Grant Terminations are . . . hereby vacated and set aside") *and* APHA Doc No. 138 ("the Resulting Grant Terminations are hereby OF NO EFFECT, VOID, ILLEGAL, SET ASIDE AND VACATED").[1] Defendants respectfully submit that these are all orders "to enforce a contractual

---

[1] The Court's June 23 partial judgments require Defendants to vacate "those specific grant terminations that plaintiffs identified in the spreadsheet submitted to the Court and served upon defendants on June 13, 2025, which spreadsheet is attached hereto as Exhibit A." States Doc No.

obligation to pay money." *California*, 145 S. Ct. at 968. Such orders exceed this Court's

jurisdiction. As the Court recognized in finding it had jurisdiction and discussing *California*, the

Court found itself "in the somewhat awkward position of agreeing with the Supreme Court

dissenters and considering itself bound by the still authoritative decisions of the Court of Appeals

of the First Circuit." States Doc No. 105 at 9-10. The Court should stay its orders until the First

Circuit has time to rule, this time with the benefit of the additional guidance from *California*.

For these and the other reasons argued by Defendants throughout the various briefs filed

in these two cases, Defendants ultimately are likely to succeed on the merits.

## II.    Absent a stay, the United States will suffer irreparable injury.

The United States will suffer irreparable injury absent a stay pending NIH's appeal.

Absent a stay, NIH will need to reinstate the grants listed on Plaintiffs' spreadsheets, and NIH

expects the hundreds of grantees to begin incurring and drawing down millions of dollars in

funding to cover their expenditures. *See Heckler v. Turner*, 468 U.S. 1305, 1307-1308 (1984)

(Rehnquist, J., in chambers) (prospect of the government being forced to make $1.3 million in

improper payments per month supported a stay of injunction). Each grant agreement permits

grantees to draw down funds as they incur them. *See, e.g.*, NIH_GRANTS_000258. While the

record is unclear, since Plaintiffs have not yet made their declarants available for cross

examination, many of the recipient institutions appear to have used interim funding to sustain

their affected research programs while the litigation remained pending. *See, e.g.*, States Doc No.

77-27 ¶ 51. Once NIH notifies each awardee that it has rescinded their termination, each awardee

may immediately incur expenses and submit reimbursement requests for those expenses. As a

---

[1]51. The spreadsheet attached to the partial judgment contains a list of over 800 grants. States
Doc No. 151. *See also* APHA Doc No. 138 (requiring vacatur of terminations of listed grants).

result, millions of dollars will flow irrevocably to grant contracts that NIH has terminated.

### III.    The balance of the equities favors a stay pending appeal.

The balance of equities tips decisively in Defendants' favor for similar reasons. If the status quo is preserved and the money is held by Defendants during the appeal of the Court's orders, the grantees can still obtain and use it at the end of the case should Plaintiffs prevail. But the opposite is not true—if the grantees are given access now, and draw down the funds, NIH lacks reliable ways to recoup them. *See California*, 145 S. Ct. at 968–69 ("respondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed."); *Tennessee. v. Dep't of Education*, 104 F.4th 577, 613 (6th Cir. 2024) ("unrecoverable" costs constitute irreparable harm). Plaintiffs represent that these institutions are operating on tight budgets with limited reserve funds. *See, e.g.*, States Doc No. 77-20 ¶ 51. Once the grantees have access to the disputed funds they will spend them, and grantees have not represented that they will give them back. Further, absent a stay, the grantees have every incentive to spend and draw down as much funding as they can as quickly as they can to hedge against a potential reversal on appeal. That adverse incentive reinforces that the balance of the equities favors NIH retaining the funds for the duration of the appeal process.

Additionally, because of the Court's orders, the Executive Branch is not able to exercise its authorities to superintend federal dollars—and, indeed, has no ability to control the use of federal dollars for purposes that the Executive Branch opposes. This loss of control contravenes the executive's strong interest in safeguarding the public fisc. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). Indeed, "the protection of the public fisc is a matter that is of interest to every citizen," *Brock v. Pierce Cnty.*, 476 U.S. 253, 262 (1986). Yet, absent a stay, millions of dollars will continue to flow to grants that the Executive has terminated.

Finally, even though Plaintiffs waited over a month from the beginning of the terminations to bring this action, Defendants have strictly complied with the Court's desire for quick resolution of this matter. NIH prepared the administrative record for over 500 grant cancellations and 7 challenged directives in a mere 20 days. Doc Nos. 109, 118. Given the breakneck pace of this litigation thus far, and Plaintiffs' delay in bringing this action, Defendants respectfully request that the Court stay its June 23, 2025, orders pending appeal of those orders and judgments, or enter a stay of at least 14 days so that Defendants may seek a stay pending appeal from the First Circuit.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court stay its June 23, 2025, orders and judgments pending appeal of those orders, or enter a stay of at least 14 days so that Defendants may seek a stay pending appeal from the First Circuit.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

LEAH B. FOLEY
United States Attorney

KIRK T. MANHARDT
Director

MICHAEL J. QUINN
Senior Litigation Counsel

Dated: June 23, 2025                    */s/ Thomas W. Ports, Jr.*

THOMAS W. PORTS, Jr. (Va. Bar No. 84321)
*Trial Attorney*
U.S. Department of Justice
Civil Division, Corporate/Financial Section

P.O. Box 875
Ben Franklin Stations
Washington D.C. 20044-0875
(202) 307-1105
thomas.ports@usdoj.gov

*/s/ Anuj Khetarpal*
ANUJ KHETARPAL
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3658
anuj.khetarpal@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: June 23, 2025                    <u>*/s/ Thomas W. Ports, Jr.*</u>
                                        Thomas W. Ports, Jr.


                                        <u>*/s/ Anuj Khetarpal*</u>
                                        Anuj Khetarpal