```
 1                  UNITED STATES DISTRICT COURT

 2                 DISTRICT OF MASSACHUSETTS (Boston)

 3                                   No. 1:25-cv-10814-WGY

 4

 5    COMMONWEALTH OF MASSACHUSETTS, et al,
                 Plaintiffs
 6    vs.

 7    ROBERT F. KENNEDY, JR., et al,
                 Defendants
 8

 9                                   No. 1:25-cv-10787-WGY

10    AMERICAN PUBLIC HEALTH ASSOCIATION, et al,
                 Plaintiffs
11    vs.

12    NATIONAL INSTITUTES OF HEALTH, et al,
                 Defendants
13

14                       * * * * * * * *

15                   For Hearing Before:
                    Judge William G. Young
16

17                    Status Conference

18

19                 United States District Court
                   District of Massachusetts (Boston.)
20                 One Courthouse Way
                   Boston, Massachusetts 02210
21                 Monday, July 28, 2025

22                       * * * * * * * *

23           REPORTER: RICHARD H. ROMANOW, RPR
                    Official Court Reporter
24            United States District Court
        One Courthouse Way, Room 5510, Boston, MA 02210
25                   rhr3tubas@aol.com
```

```
 1                 A P P E A R A N C E S

 2

 3   GERARD J. CEDRONE, ESQ.
     KATHERINE B. DIRKS, ESQ.
 4   PHOEBE LOCKHART, ESQ.
        Massachusetts Attorney General's Office
 5      One Ashburton Place, 20th Floor
        Boston, MA 02108
 6      E-mail: Gerard.cedrone@mass.gov
        For the Commonwealth of Massachusetts plaintiffs
 7

 8   SUZANNE SCHLOSSBERG, ESQ.
     OLGA AKSELROD, ESQ.
 9      American Civil Liberties Union Foundation
        125 Broad Street
10      New York, NY 10004
        Email: Oakselrod@aclu.org
11   and
     KENNETH PARRENO, ESQ.
12      Protect Democracy Project
        15 Main Street, Suite 312
13      Watertown, MA 02472
        Email: Kenneth.parreno@protectdemocracy.org
14   and
     MAX ROLLER SELVER, ESQ.
15      Emery Celli Brinkerhoff Abad Ward & Maazel, LLC
        1 Rockefeller Plaza, Suite 8th Floor
16      New York, NY 10020
        Email: Imaazel@ecbawm.com
17      For the APHA plaintiffs

18

19   SAMUEL HOBBS, ESQ.
        DOJ-Civ
        Corporate Financial Litigation
20      1100 L St NW, Room 7210
        Washington, DC 20005
21      Email: Samuel.hobbs@usdoj.gov
     and
22   ANUJ K. KHETARPAL, ESQ.
        United States Attorney's Office
23      1 Courthouse Way, Suite 9200
        Boston, MA 02210
24      Email: Anuj.khetarpal@usdoj.gov
        For all defendants

25
```

```
 1          P R O C E E D I N G S

 2          (Begins, 11:00 a.m.)

 3          THE CLERK:  The Court will hear Civil Action

 4    Number 25-10787, the American Public Health Association,

 5    et al versus the National Institutes of Health, et al

 6    and 25-10184, the Commonwealth of Massachusetts, et al

 7    versus Robert F. Kennedy, Jr., et al.

 8          THE COURT:  Well, good morning, and welcome back.

 9          I've authorized that these proceedings may be

10    accessed on the internet.  Since that is so, if you are

11    accessing these proceedings on the internet, I remind

12    you that the rules of court remain in full force and

13    effect, and that is to say there's no taping, streaming,

14    rebroadcast, screen shots, or other transcription of

15    these proceedings.  And you must keep your microphone

16    muted.  If you do not, I'll be forced to cut you off at

17    that time.

18          Since this a continuation, we won't have everyone

19    introduce themselves, but it will be helpful if, when

20    you speak for the first time, if you wouldn't introduce

21    yourself and who you represent, so that the Reporter may

22    get a complete and accurate record.

23          And we'll start with -- with a question of mine.

24    My impression is that the, um, National Institutes of

25    Health, the law having been declared, in the Court's
```

```
 1    opinion, has moved to restore -- I'm talking about Phase

 2    1 now, the grants to which the Court's declaration of

 3    law applies, is that correct?

 4         MS. DIRKS:  It's -- good morning, your Honor,

 5    Katherine Dirks from the Massachusetts Attorney

 6    General's Office here on behalf of the plaintiff states.

 7         Your Honor, the government has taken steps to

 8    restore those grants.  I don't believe the reinstatement

 9    is complete.  But we've been working cooperatively with

10    the federal government to make sure that that does in

11    fact reach the final reinstatement of the grant

12    position.

13         THE COURT:  That's fine.

14         MS. SCHLOSSBERG:  And, your Honor, if I may?  From

15    the APHA plaintiffs.

16         THE COURT:  Yes.

17         MS. SCHLOSSBERG:  Suzanne Schlossberg on behalf of

18    the APHA plaintiffs.

19         We actually know that at least -- as of this date,

20    at least 50 grants have not been reinstated from the

21    APHA plaintiffs' spreadsheet.  We have been working with

22    defendants and have inquired on a particular date

23    certain by which they will have reinstated all the

24    grants, but have yet to hear back from them.  It's

25    possible that during this process we are not able to
```

1    come to terms on some of the concerns we've raised, and

2    so we may need to file a motion to enforce this with

3    this Court and, um, shortly.

4        THE COURT:  And you have what rights you have.

5        All right.  Let's now talk about Phase 2.  And

6    while I'm very grateful for the joint proposed schedule

7    and the agreements so far as they go, um, it's not wrong

8    for me to say that, um, in all honesty I still don't

9    understand Phase 2.

10        So, um, I'm not clear, with the fiscal year

11    running down as it is, what you, um, expect -- still I'm

12    sticking with the plaintiffs, what you expect the Court

13    can accomplish on your behalf, um, and I understand you

14    say it should do it, but, um, try to answer that

15    question.

16        MS. DIRKS:  Yes, your Honor, and my colleague,

17    Attorney Lockhart, will speak to that.

18        THE COURT:  Sure.

19        MR. LOCKHART:  Good morning, your Honor, Phoebe

20    Lockhart for the plaintiff states.

21        THE COURT:  Yes.

22        MR. LOCKHART:  So last Wednesday we filed a motion

23    seeking just a limited discovery as to our unreasonable

24    delay claims as well as --

25        THE COURT:  We'll get to discovery, but even to

1    evaluate that motion, I'm asking you to help me.

2        What do you think you're going to discover?  What

3    am I going to do between now and September 30th?  But

4    maybe September 30th is not the key date, maybe your

5    rights, you -- at least as you conceive them, um, go on

6    thereafter and there's things for me to adjudicate.  I'm

7    asking for help.

8        MR. LOCKHART:  Thank you, your Honor.  We are

9    requesting a trial date, um, in early September and --

10        THE COURT:  I know that and, um, I'm sympathetic

11    to that.  Suppose you got that, what relief then do you

12    think is going to happen?

13        MS. LOCKHART:  We would ask the Court to find that

14    defendants violated Section 7061, and the Constitution,

15    and, um, reasonably take steps to expend the funds prior

16    to the conclusion of the fiscal year.

17        THE COURT:  And that of course is why it's so

18    important for you to have the trial on the 8th of

19    September, and thereafter, if you will.

20        MS. LOCKHART:  Yes.

21        THE COURT:  All right.  And help me a little more.

22        What haven't they done, that it's clear they're

23    supposed to do, um, in light of the Administrative

24    Procedure Act law?

25        MS. LOCKHART:  Yes, your Honor.

1          So there are several components of our 7061 claim,

2     it includes the defendants' failure to hold certain

3     types of meetings, including study section and advisory

4     council meetings, that NIH has established through its

5     already-published timetables in the past, as well as to

6     gives a thumbs-up and thumbs-down decision as to each

7     application that is before it, as it has done prior to

8     2025.

9          THE COURT:  All right.  All right, I follow that.

10    I follow that.

11         Now, um, with that in mind, um, let me hear from

12    the defendant officials, if you could introduce

13    yourselves.

14         Is that what this is all about?  You have the same

15    view of this?  And not that you concede it, but, um,

16    that's what we're going to try now, correct?

17         MR. HOBBS:  Good morning, your Honor, Sam Hobbs,

18    representing the United States.

19         We do not share the view of exactly what the

20    relief would ultimately be from the Court.  So as it

21    relates to this fiscal year, um, I guess it's first

22    helpful to start with a reminder that, for the APHA

23    plaintiffs, the Court has already dismissed the

24    constitutional claims, and that reasoning applied --

25    also applied to the state plaintiffs, and that motion to

1   dismiss, which explains that is pending with the Court.

2   And so the only real claims for the Court to decide are

3   the APA claims, and with the APA claims, the fiscal year

4   shouldn't matter.

5        So the Court, even if the fiscal year has passed,

6   um, could still order, with regard to those

7   applications, that the defendants need to hold a

8   particular meeting or make a final decision or reinstate

9   the consideration of those applications regardless of

10  whether the fiscal year is, um --

11       THE COURT:  Except that, um, and correct me, my

12  understanding is that, um, the appropriated funds that

13  the Congress has appropriated to NIH and its institutes

14  needs to be obligated before the end of the fiscal year

15  or they revert to the general fund.  Now there still is

16  an NIH, there still are the Institutes, but it is the

17  budget that the President has just signed that -- of

18  course that budget has to be worked out in

19  appropriations, but it's that budget that is now law

20  that will, as it's worked out in appropriations, govern

21  the appropriations going forward, starting as of October

22  1.

23       Do I understand the law correctly?

24       MR. HOBBS:  I believe so, your Honor.

25       THE COURT:  Oh, okay.

1          MR. HOBBS:  I do think there's a qualification

2    we're making, and we can give you a more fulsome

3    response to that -- to this question at a later time.

4    But there's case law about when there's litigation

5    pending relating to appropriated funds, that even if

6    the, you know, fiscal year passes, those appropriated

7    funds can be withheld and extended in the new fiscal

8    year.  So there's some play in the joints relating to,

9    you know, litigation in other cases.

10          THE COURT:  I see.

11          Do you agree with that?

12          MS. DIRKS:  Um, we certainly hope that's the case,

13    your Honor, but I don't know that we know that to be the

14    case.  So I think that's a matter for further discussion

15    with the defendants.

16          THE COURT:  Well that's what I would think, um,

17    because it would seem you want to be guaranteed of that.

18          MS. DIRKS:  Yes, your Honor.

19          THE COURT:  Now you mentioned a motion to dismiss.

20    I understand the plaintiffs take the position that

21    there's no motion to dismiss now, because we've gotten

22    past that, though whether or not you do, I think the way

23    to address that, address grounds for a dismissal is at a

24    final pretrial conference, and I propose to schedule

25    that really right at the outset of September.

1          So let's go to the rub there.  What does the
2     defense say about the proposed discovery, are you
3     agreeable to any of it?
4          MR. HOBBS:  No, your Honor.  So there's under --
5     under binding precedent there's a clear process for --
6          THE COURT:  Well I didn't ask for argument.  You
7     don't agree.  All right.  They say they've got claims
8     that go beyond the APA.  You say they don't.  So, one,
9     that has to be figured out.  If they do, one imagines
10    they can get some discovery.  If they don't, then
11    perhaps they cannot.
12         Though my experience has been, um, that discovery
13    -- some limited discovery can be ordered, in the
14    discretion of the Court, even in an APA claim, can't it?
15         MR. HOBBS:  After the government has had an
16    opportunity to complete or supplement the administrative
17    record, that's correct.
18         THE COURT:  All right.  Thank you.  Um -- Thank
19    you.
20         So let's get -- well let me put it to you this
21    way.  If we're going to have a trial, if we can -- well
22    let me talk to Ms. Belmont for whom I work.
23         (Talks to Clerk.)
24         THE COURT:  The defense wants the trial to start
25    on the 23rd.  That's Rosh Hashanah.  I don't -- we

1    respect -- I'm not sure that that affects anyone, but we

2    respect that if it does.  So I don't know that that's

3    the day.  But let me talk for a moment with Ms. Belmont.

4         (Talks with Clerk.)

5         THE COURT:  All right, back to the plaintiffs.

6         If we shoot for the 8th, or as near to the 8th as

7    we can get, um, I'm more skeptical about discovery as a

8    practical matter.  If we go to the 22nd, um, or even the

9    15th, I'm less -- or I'm more amenable to discovery.

10        What do you think?

11        MS. DIRKS:  Um, thank you, your Honor, much

12   appreciated.

13        I -- obviously we've asked for the 8th, but also

14   the earliest available trial date after the 8th.

15        THE COURT:  You did that and it's jury-waived.  So

16   I really mean to be transparent.

17        I have a bank fraud case.  Now under the usual

18   rules, and I honor the usual rules, criminal comes

19   before civil.  But this is an equity case, it's got

20   certain urgencies.  So against other civil cases, I have

21   no hesitancy putting you first.

22        I have a final pretrial conference today, this

23   afternoon.  Obviously the man is innocent and I -- I

24   don't make a calculus with respect to "Oh, it's likely

25   that people will plead," though most criminal cases

1    plead out.  But looking at this one, it doesn't look

2    like it's going to, which of course is their right.  It

3    seems to me we ought to get done sometime that week.

4    And then if you go for it, you can follow right along,

5    as soon as I put that case to the jury.

6         Is that what you want --

7         MS. DIRKS:  May I ask your Honor --

8         THE COURT:  -- if you don't get all your discovery

9    or you get very little?

10         MS. DIRKS:  Of the -- if the -- of the choice

11    between the 15th and the 22nd, your Honor, we'd prefer

12    the 15th, if that's available to the Court.

13         THE COURT:  Well that's obvious, yes.

14         MS. DIRKS:  And then with respect to resolving

15    discovery, um, we would hope that we could proceed, um,

16    between now and then -- and I don't know if, um, if it

17    would benefit the Court to sketch out what we expect to

18    happen in the next couple of weeks or whether we'll just

19    take it as it comes, but I know the motion is not fully

20    briefed yet with respect to the plaintiffs' requests.

21         THE COURT:  Um --

22         MS. DIRKS:  All of which is to say that the

23    parties will prepare for the 15th, your Honor, um, in

24    the hopes that, um, that the discovery needs or the

25    disputes resolving those needs are fully resolved by

1   then.

2        THE COURT:  Suppose -- again subject to what

3   Ms. Belmont says -- well let's ask her what she says.

4        Can we do a final pretrial on the 2nd of

5   September?

6        THE CLERK:  We can do it in the morning.

7        THE COURT:  Yes, fine.  Fine.

8        So we're going to tweak your agreement and have a

9   final pretrial on the 2nd of September, 2025.  At that

10  time I'm going to hear the government, and so -- and you

11  frame it as a motion to dismiss, but under Rule 16

12  that's precisely the time where I, by then should have

13  my full record, and I can hear the government on, um,

14  what should -- if anything, what claims should be

15  dismissed, because I will understand fully the

16  plaintiffs' claims.  So it won't just be going over

17  exhibit lists, I will hear the government substantively

18  on that.

19       So let me turn to the officials now, the

20  defendants.

21       If I proceed in that wise, it seems to me it's

22  open to me to order some discovery.  They say this is

23  limited discovery.  It doesn't seem too limited to me.

24       When am I going to have the full administrative

25  record?  So what's, um, Mr. Hobbs -- that's been agreed

1     to?

2          MR. HOBBS:  So we've reached an agreement, um,

3     almost a full agreement with the APHA plaintiffs with

4     regard to creating, you know, completing an

5     administrative record.  We think that is the most

6     efficient way to proceed with both sets of plaintiffs so

7     that we're not on some dual tracks.  And the agreement

8     that we've reached is for, you know, the plaintiffs to

9     provide a list of all the applications at issue and then

10    the NIH will provide information relating to, you know,

11    any delays that occurred with those applications, the

12    current status of those applications, what actions have

13    occurred, and which we believe, and the APHA plaintiffs

14    have agreed, gives the Court all the information it

15    needs to decide these claims.

16          If we proceed with stipulations, um, you know as a

17    group with the APHA, then the government would have the

18    certifications completed by, um, August 22nd.  So it

19    would come before the September 2nd conference that your

20    Honor is proposing.

21          And if the state plaintiffs were to join that

22    process, which you know so far they're inclined to do --

23    NIH has indicated that because there would be several

24    hundred -- likely several hundred more applications

25    added to the list, it could take more time for them to

1  complete their certifications.  And just for your

2  edification, they have to canvas, you know, 50 different

3  research heads to give them instructions.  So it is a

4  lot of leg work to produce the certification and records

5  being requested.  And so they may need more time.

6  They've tentatively mentioned two weeks, which would get

7  it just past the September 2nd conference that your

8  Honor had mentioned.

9         But again, if we're proceeding on two tracks where

10  there's, you know, discovery for the state plaintiffs

11  and then certifications are different, that creates some

12  inefficiencies.  And we agree with your Honor's

13  assessment that the discovery they're seeking is really

14  not all that limited.  And we think the stipulation that

15  we've proposed should fully provide all information

16  needed and is the most efficient way forward.

17         The only remaining area of disagreement that we've

18  had with the APHA plaintiffs, um, regard their request

19  to provide a supplemental list of applications in

20  addition to the list that they provided on June 30th,

21  and, you know, NIH wants to, you know, have a clear

22  cutoff of when these applications they're going to have

23  to pull records is for.  And so rather than produce new

24  certifications for a new list, as we proposed, that the

25  supplemental list would be included in any judgment, um,

1    without NIH having to go back and, um, you know

2    reproduce records and certifications for that

3    supplemental list.

4         And so we think that gives the plaintiffs

5    everything, um, they could want, everything they need,

6    and it's the most efficient way to get to the merits,

7    um, to get to a judgment in the case.

8         THE COURT:  Thank you.

9         Now to the state plaintiffs.  Why doesn't that

10    make sense?

11        MS. DIRKS:  I'm sorry, your Honor?

12        THE COURT:  Agreeing and proceeding by way of

13    stipulation, as Mr. Hobbs has laid out, and he's agreed

14    with the other group of plaintiffs.

15        Yes?

16        MS. LOCKHART:  Yes, your Honor.

17        So notwithstanding the ability to proceed on a

18    similar track with Phase 1, we believe we are

19    differently situated than the APHA plaintiffs on this

20    Phase 2 issue for a couple of reasons.

21        First, the plaintiff states have already served

22    discovery requests on defendants in early June, putting

23    them on notice as to the substance of our requests for

24    nearly 2 months.  There is thus no undue surprise or

25    burden for the defendants if the Court were to order

 1    that limited discovery at this time.

 2         THE COURT:  Well, one, it's not very limited, and,

 3    two, of course there's a burden on them.  You want

 4    interrogatories to be answered.  You want -- there's a

 5    rather significant amount of additional documents to be,

 6    um, produced.  You want to take depositions of various

 7    people, not just one, various people.  Don't tell me

 8    that it's so limited here.  But, yes, you've given them

 9    notice, but they oppose it, that's what, um, something

10    we're considering here today.

11         Doesn't it make more sense to do it by

12    stipulation, assuming they're sufficiently fulsome?

13         MS. LOCKHART:  Your Honor, I'm prepared to argue

14    why we're entitled to discovery at this time, but I

15    understand the motion hasn't been fully briefed.  But if

16    you would like me to go into that at this time, I'm

17    happy to do so.

18         THE COURT:  I think it probably makes sense to

19    hear you.  I'll hear you.

20         MS. LOCKHART:  Okay.

21         So another difference between the plaintiff states

22    and the APHA plaintiffs is that we have different

23    remaining claims.  The APHA plaintiffs still have a

24    Section 7062 claim pending and we have our

25    constitutional ultra vires claims.  And we are entitled

1    to discovery as to our Section 7061 claim, as many other

2    courts have held, and this is due to the inherent

3    differences between a traditional Section 7062 APA

4    claim, which the Court has already reached on the

5    merits, and Section 7061 claims.

6         At Stage 2, the merits are inherently fact-

7    dependent and premised on something different, agency

8    inactions, and in such cases courts have held that there

9    is no final agency action to demarcate the limits of an

10    administrative record.

11         We also think that the administrative record

12    produced by defendants confirms why courts have taken

13    that approach.  Defendants have produced little more

14    than meeting notices and a handful of redacted e-mails.

15    Plaintiffs are entitled to discovery beyond the

16    administrative record, including factors like the track

17    factors, such as how defendants' backlog of meetings and

18    decisions on applications are complying with the

19    published timetables that NIH has met prior to 2025, and

20    as well as what efforts defendants are taking to catch

21    up before the end of the fiscal year.  These are items

22    that courts have held, um, allow discovery for this type

23    of APA claim, it's different than a final agency action

24    as we proceeded with --

25         THE COURT:  I don't have a brief for that, um,

1    when you say "Courts have held."

2        MS. LOCKHART:  Yes, your Honor.  I'm referring, in

3    our motion for discovery, to the cases we've cited.

4        THE COURT:  That you've cited there?

5        MS. LOCKHART:  Yes.

6        THE COURT:  All right.  Thank you.

7        All right, Mr. Hobbs, I know it hasn't been fully

8    briefed, I rather like your proposal, but my duty may be

9    to enter an order.  What do you say?  They're claiming

10   that they have a right here.

11       MR. HOBBS:  Well so, your Honor, the process, um,

12   the -- that you know under binding precedent, the

13   **Department of Commerce** case from the Supreme Court, um,

14   I think in 2020, um, where the Supreme Court said very

15   clearly that agencies have a right to complete or

16   supplement the record, and only after they have had that

17   opportunity, um, can the Court then order the agency to

18   submit to discovery.

19       And so if we were to follow the process that the

20   Supreme Court has said governs here, then the -- their

21   motion for discovery is going to be briefed by August

22   6th, and then the defendants would get an opportunity to

23   complete or supplement the record.  And only after that

24   opportunity has passed would there then be -- would it

25   then be ripe to consider whether there's additional

1    discovery.  And so we're talking about a much much

2    longer process until we actually get to a hearing.

3         And so what we propose instead is to say, um, give

4    us your list of applications that are at issue and we'll

5    give you all the information that's needed in order to

6    adjudicate these claims.

7         THE COURT:  Here's what we're going to do.  I'm

8    going to take the legal arguments as to discovery under

9    advisement.  The, um, schedule, to which the parties

10   have agreed, is adopted by the Court with the alteration

11   that a final pretrial conference, which will include the

12   time for argument that one or more claims ought be

13   dismissed at that stage, will take place on the morning

14   of September 2nd.  The hearing of the case will take

15   place, um, no later than the Monday, the 15th of

16   September, and will follow immediately upon, um, the

17   criminal case going to the jury.  So that means we may

18   be able to get some trial time in on the 11th -- no, no,

19   we can't, I'm sorry.  I'm sorry.  Well we might get some

20   in on the 11th, but most likely we'll start on the 15th.

21        Now, um, the -- no, wait a minute.  The matter of

22   discovery, I will say I urge the parties to see if you

23   can't agree as to a schedule much like Mr. Hobbs has set

24   out, it commends itself to the Court.  But I don't

25   require agreement.  And, um, I will, um -- either on the

```
 1    15th of August or as soon as possible thereafter, I will
 2    enter an order with respect to discovery, having
 3    considered the status of matters at that time.
 4         I think that --
 5         Yes?
 6         MR. SELVER:  This is Max Selver for the APHA
 7    plaintiffs.
 8         THE COURT:  Yes.
 9         MR. SELVER:  May I be heard just on a couple of
10    logistical issues for a Phase 2 schedule in our case?
11         THE COURT:  You may, but let me go around and see
12    if there's any questions on what I've just said.  I have
13    that in my mind.
14         Any questions?
15         MS. DIRKS:  Yes, your Honor.
16         THE COURT:  Go ahead.
17         MS. DIRKS:  I believe the Court has referred to
18    this as an agreed-upon schedule as to the state
19    plaintiffs.  Sir, this is the state plaintiffs' proposal
20    and we have not yet received a response from --
21         THE COURT:  I'm ordering it, um, with the changes
22    I've just made.
23         MS. DIRKS:  Yes, your Honor.
24         THE COURT:  Any questions about what I've said?
25         MR. SELVER:  So I think one question would be the
```

1    deadlines for the parties' prehearing briefs, um, within

2    the confines of that schedule?

3              THE COURT:  It's not set forth there?

4         MR. SELVER:  We haven't -- in the APHA plaintiffs'

5    case, we have a proposal from plaintiffs about

6    prehearing briefs and a proposal from defendants.  If

7    you're speaking about the proposal in the states case --

8              THE COURT:  You know prehearing briefs, um -- I'll

9    be here on the 2nd of September.  I'll be ready.

10   Anything you give me will be -- I will -- that I can

11   have read, I will have read.

12             Does that satisfy you?

13        MR. SELVER:  Understood, your Honor.  I think one

14   issue that is related to that is the issue that

15   Mr. Hobbs mentioned about the supplemental list of

16   applications that we would like to provide to the

17   defendants.  Our proposal is that similar to the

18   certification that they've agreed to, for the

19   applications we've already provided, if we provide them

20   a list by a week from today, next Monday, August 4th,

21   that they produce a certification about their action on

22   each of those applications in advance of the hearing.  I

23   think we want to make sure we have that certification in

24   advance of any briefs.

25             THE COURT:  Well they get -- but that's a perfect

1  world.  If you can't provide the certification until the

2  week, they get the same time to respond, and we'll see

3  where we are.

4      MR. SELVER:  So, yes, your Honor.  And I think

5  the, um, the States case, there was not a proposal about

6  when the defendants would produce a certification,

7  because they don't have the same agreement about the

8  supplemental --

9      THE COURT:  I know, but now they do, by the 15th.

10     Mr. Hobbs, any questions?

11     MR. HOBBS:  Um, yes, your Honor.  So it's similar

12 to Mr. Selver's question.

13     So just to be clear, with the joint proposal that

14 we've submitted on Friday, in Docket 163, there were

15 some discrepancies between the schedules that we

16 proposed.

17     THE COURT:  I really thought that -- I looked at

18 them and I thought they were much the same.

19     MR. HOBBS:  We were very close.

20     THE COURT:  And so I guess I missed that.

21     MR. HOBBS:  The main difference related to the

22 fact that we weren't -- we hadn't reached an agreement

23 on how to handle a supplemental list.  And so their

24 proposal was to submit a supplemental list next week,

25 and that we would then have, you know, 3 weeks, I think,

1    to submit our certification.

2        Our counterproposal to that was that rather than

3    submit to NIH like another list to which they have to do

4    all this work -- and they've been working very hard to

5    comply with all of the deadlines in this case, that we

6    would just stipulate that any judgment that resulted

7    from the Phase 2 claims would apply to the applications

8    listed on the supplemental list without NIH having to,

9    um, dig up the records and do the certifications.

10        THE COURT:  Why isn't that satisfactory?

11        MR. SELVER:  So we just think that it's important

12    that there's a complete record as to all of the

13    applications that are subject to these claims, and the

14    only way to get a complete record for all of the

15    applications that are subject to these claims is for

16    them to produce the same certifications they have

17    already agreed to for this additional set that we would

18    produce one week from today.

19        THE COURT:  You're trying to get to trial here.

20    So as to this one, Mr. Hobbs, as an officer of this

21    court, he's offering this stipulation as to those

22    supplemental claims.  If, however this works out,

23    that's -- because I take him at his word, of which he's

24    entitled to, I'm going to go down that route.  If then I

25    require more data to support whatever it is I come up

1    with, I will order it, and it will be produced in a

2    timely fashion.  But it may well be that this

3    stipulation will be sufficient and nothing further need

4    be ordered.

5         Now let me make sure Mr. Hobbs understands that.

6    Do you understand what I just said?

7         MR. HOBBS:  Yes, your Honor.

8         THE COURT:  And that's fine by you, I take it?

9         MR. HOBBS:  That is fine by us.

10        THE COURT:  So why isn't that all right for you?

11        MR. SELVER:  Understood, your Honor, and we'll

12   accept, um, your counsel on this and agree to that

13   proposal.

14        THE COURT:  All right.

15        MR. SELVER:  One thing I would just like to

16   request on that is that we have more time.  Because the

17   supplemental spreadsheet will not require NIH to do

18   additional work on their end, we would request a little

19   bit more time to work with our clients and their members

20   to --

21        THE COURT:  No further time.

22        MR. SELVER:  It would be before the hearing, your

23   Honor.

24        THE COURT:  We're going to go to trial.

25        MR. SELVER:  Yes, we would agree to submit it in

1    advance of the trial, just a little bit later than the

2    August 4th date we proposed.

3         THE COURT:  That's the order.  You proposed it.

4    You're held to it.

5         All right.  There's one other aspect of this that

6    I need to speak to, and again I speak only because I

7    think it's helpful.

8         The, um, defendant public officials, quite

9    properly, as they have every right, have made

10   applications for an emergency stay to the Supreme Court

11   of the United States.  I am not going to speak to it or

12   make any arguments with respect to it at all.  But that

13   fact, um, raises in my mind a possible outcome that I

14   consider I ought make an indicative ruling with respect

15   to, and it has to do with this matter of discrimination.

16        The -- I've read the Solicitor General's brief and

17   I understand that the plaintiffs will get a chance to

18   oppose.  I've said my say with respect to those matters

19   and have nothing further to say.

20        I just can conceive of really three possible

21   outcomes to the application for a stay and they are

22   these.

23        One, the stay may be denied.  If it's denied, what

24   we've done here this afternoon of course -- this

25   morning, governs the further proceedings in the further

1    aspect of this case.

2         Two, the stay may be granted but without, um,

3    specificity as to the grounds on which the, um, Supreme

4    Court is acting.  As I read the Solicitor General's

5    brief, he raises two arguments.  One, he raises the

6    Tucker Act argument, it's a respectable argument, though

7    I've rejected it, as has the Court of Appeals.  But he

8    also raises an argument that these matters are committed

9    to agency discretion and, um, the DOGE -- I'll call them

10   the "DOGE directives," are within agency discretion.

11        Well wanting and believing it was in the interests

12   of the parties to get a prompt resolution, I purposely

13   have focused my actions on serving up to the Court of

14   Appeals what I've called a "clean APA," um, "based

15   determination," and indeed I've entered a partial final

16   judgment under the appropriate civil rule.

17        In addition to this Phase 2, I have made it clear

18   on the record, in a conclusory way, that I have found

19   that the DOGE directives, um, direct racial, gender,

20   and, um, what I call "LGBTQ discrimination."  I have not

21   entered any, um, equitable decision, and indeed as the

22   footnote to this Court's comprehensive written opinion

23   indicates, in light of decisions of the Supreme Court, I

24   now include that it would be improvident for me to do so

25   as to LGBTQ discrimination, though discrimination there

1    was.  But as to racial and sexist discrimination, I

2    intend, and I've intended throughout, to enter a

3    prospective injunction against the public officials from

4    prospectively engaging in any such discrimination.

5        I have thought that such -- and I think that's

6    clear on the record, I'm simply reiterating it, and I'm

7    at work now in, um, writing up the factual basis for

8    entering such an injunction and considering the language

9    that I will use in fashioning such an injunction.

10        In the unlikely event that the Supreme Court

11    indicates that there is a stay -- and this is what I

12    have not thought through and I take the opportunity now

13    to explain it, so that -- so that everyone understands.

14    I don't want to be in a position, and I don't want to be

15    seen to be in a position of, um, in any way disregarding

16    or getting around an order of the Supreme Court of the

17    United States.  That -- I would never do that.

18        So I guess what I'm saying is that if the Supreme

19    Court enters a stay and the stay is reasonably limited

20    to the Tucker Act issue, surely this Court then retains

21    jurisdiction, as a court of equity, which the Court of

22    Federal Claims is not, to address the discrimination,

23    which this Court has unequivocally found.

24        If -- so now I'm saying that were that to be the

25    way it plays out before the Supreme Court, I will

1    immediately convene -- because we can't wait on my

2    written decision, I will convene a hearing and I will

3    impose an injunction that's not only prospective, but

4    would say -- and it would be a subset of the grants to

5    which the, um -- well what I have called the "DOGE

6    directives," which I've declared invalid and have no

7    force and effect, a subset of those, which in this

8    Court's mind evidence the racial and gender

9    discrimination, um, and I will enjoin -- forthwith in

10   this wise, I will instruct the officials and the Cabinet

11   Secretary that those grants are to be reevaluated at

12   once forthwith, um, without regard to racial or gender

13   issues of any sort, to see whether those grants, as a

14   scientific matter, are not appropriate to go forward.

15   It shouldn't take long, because of course the scientists

16   have already reviewed these grants and allocated the

17   funds and such that the grants may go forward.

18        To reiterate.  If there's no stay, I will get to

19   this discrimination business with a prospective

20   injunction in the ordinary course, and we have our, um,

21   framework to proceed on Phase 2.  If there is a "blanket

22   stay" or anything that fairly can be construed as a

23   "blanket stay," all orders in this case are suspended

24   until that stay is lifted.  And the only thing left

25   appropriately for this Court is to, um, file, as the

1    Rules of Civil Procedure require, its written findings

2    of racial, gender, and I can still find LGBTQ

3    discrimination, though I've decided it would be

4    improvident to enter an order, that I'm going to go

5    ahead with anyway.  Only if the Tucker Act is stayed but

6    the issue of whether it's committed to agency discretion

7    is not stayed, fairly read, would I have the need

8    promptly to enter an injunction, since my written

9    opinion presumes this Court has subject matter

10   jurisdiction over the APA claim.

11           Questions as to what I just said.  And we'll go

12   around.

13           Any questions?

14           MS. DIRKS:  None from the state plaintiffs, your

15   Honor.

16           THE COURT:  APHA?

17           MS. SCHLOSSBERG:  No, your Honor.

18           THE COURT:  Questions, Mr. Hobbs?

19           MR. HOBBS:  Your Honor, it's not a question, but

20   we do have a comment on the discrimination --

21           THE COURT:  Well feel free, but you'll understand

22   I'm not arguing it, I simply am trying to explain the

23   Court's position.  But I will hear you, sir.

24           MR. HOBBS:  Yeah.  No, I understand the Court's

25   position, I just think it's important for the defendants

```
 1    to note, um, that since the plaintiffs never asserted
 2    discrimination claims, we've never had an opportunity to
 3    be heard on the discrimination claims.  And so at the
 4    very least, we would seek an opportunity to submit, um,
 5    briefing on why we think the Court doesn't have
 6    jurisdiction to, um, issue any rulings or injunctions
 7    related to the discrimination claims.
 8         THE COURT:  Then I urge you to file such briefs,
 9    because I -- assuming no stay, which is what I'm
10    assuming, I'm working on it right now.  So the sooner I
11    get your views on that, the better it will be.  For me
12    it's palpable and the Court must deal with it.  But of
13    course I will entertain your briefs.
14         MR. HOBBS:  Understood, your Honor.  Thank you.
15         THE COURT:  Thank you.
16         All right, it's good to see you all.  We'll stand
17    in recess.
18         (Ends, 11:50 a.m.)
19
20
21
22
23
24
25
```

1              C E R T I F I C A T E

2

3        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

4    hereby certify that the forgoing transcript of the

5    record is a true and accurate transcription of my

6    stenographic notes, before Judge William G. Young, on

7    Monday, July 28, 2025, to the best of my skill and

8    ability.

9

10

11

12

/s/ Richard H. Romanow 07-30-25

13   _____

RICHARD H. ROMANOW   Date

14

15

16

17

18

19

20

21

22

23

24

25