UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, *et al.*, <br><br> Defendants. | Civil Action No. 1:25-cv-10814-WGY |
| | Leave to File Granted During July 28, 2025, Hearing |
| AMERICAN PUBLIC HEALTH ASSOCIATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL INSTITUTES OF HEALTH, *et al.*, <br><br> Defendants. | Civil Action No. 1:25-cv-10787-WGY |

**DEFENDANTS' MEMORANDUM OF LAW
CONCERNING THE COURT'S JURISDICTION TO CONSIDER OR
ENTER AN ORDER ON DISCRIMINATION**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

    I.      The Court Lacks Jurisdiction to Raise or Decide Supposed Discrimination *Sua Sponte*. ............................................................................... 3

    II.     Any Effort to Address "Discrimination" Now Would Be Untimely ....................... 5

          A.     The Judgment Cannot Be Reopened to Add New Claims .......................... 6

          B.     Plaintiffs Cannot Add a Discrimination Claim to Phase 2 ......................... 8

    III.    Plaintiffs Lack Standing to Assert a Discrimination Claim .................................... 9

          A.     The Organizational Plaintiffs Lack Standing to Assert a Discrimination Claim ............................................................................... 10

          B.     The State Plaintiffs Lack Standing to Assert a Discrimination Claim ............................................................................................... 13

CONCLUSION…………………………………………………………………………………. 13

**INTRODUCTION**

Defendants respectfully object to any further consideration of discrimination in this case by the Court or entry of any order concerning discrimination and submit this memorandum supporting their objection to such action by the Court.[1]

In this Court's oral and written ruling entering a partial final judgment in Phase 1 of this case, the Court *sua sponte* found Defendants liable for racial and gender discrimination—despite the fact that no party has made a claim of discrimination in these actions, *see generally* States Doc. No. 75; APHA Doc. No. 1, and no party has addressed whether the grant terminations or Challenged Directives amount to unlawful discrimination in any briefing or hearings before the Court. At the status conference on July 28, 2025, the Court expressed an intention to issue an injunction on discrimination, even though no plaintiff has requested such relief or made any showing required before a permanent injunction may issue.

As we demonstrate below, the Court lacks jurisdiction to *sua sponte* enter findings and order relief regarding any claim of discrimination.

**BACKGROUND**

After bifurcating Plaintiffs' Administrative Procedure Act (APA) claims into two merits phases, the Court held a hearing for Phase 1 on June 16, 2025, with respect to grants terminated due to NIH guidance that Plaintiffs refer to as Challenged Directives. APHA Doc. No. 121. The Court ruled from the bench that NIH's grant terminations and Challenged Directives violated the APA. *Id.* The Court announced an additional finding that the terminations "represent[] racial

---

[1] Ordinarily, Defendants would move to dismiss under Rule 12(b)(1) when a court lacks jurisdiction to entertain a *claim,* but in this circumstance, no claim of discrimination has been asserted, and a lack of jurisdiction may be raised "at any stage of the proceedings." *Kontrick v. Ryan,* 540 U.S. 443, 455 (2004).

1

discrimination and discrimination against America's LGBTQ community."[2] June 16 Hr'g Tr. 83. The Court observed that "[i]t may very well be that while I can recognize it and call it out, I have no power to enter injunctions with respect to it. But I'm certainly open to considering that." *Id.* at 85. The Court also stated, "on this discrimination issue, I am prepared to receive evidence, but I do not require it." *Id.* But no party has offered such evidence, and no plaintiff sought to add any allegation of discrimination. The Court made this finding even though *no party at any time* alleged that the grant terminations or Challenged Directives were discriminatory.

The Court thereafter addressed discrimination in its written opinion on the Phase 1 APA claims. APHA Doc. No. 151. It declared that "[m]ore is required to be done on Phase One." *Id.* It went on find "there was pervasive racial discrimination in selecting grants for termination," and that "the grant terminations here at issue demonstrate an unmistakable pattern of discrimination against women's health issues." *Id.* at 7 n.4. It also iterated its intent to "fashion a permanent injunction to prevent any continuation of this practice." *Id.* Finally, it invited the parties "to present evidence of the harm resulting from such terminations." *Id.*

Despite the Court's invitation, no plaintiff has sought a hearing on the subject of discrimination. And in briefing before the Supreme Court after this Court's discrimination finding, the State Plaintiffs distanced themselves from a foray into supposed discrimination, noting that "[t]he plaintiff states have not pressed freestanding claims for race- or gender- based discrimination in this case." Resp't's Resp. Br. at 17 n.10, *Kennedy v. Massachusetts*, No. 25A103 (2025) (No. 3). Despite Plaintiffs' position, the Court reiterated its intent to issue an injunction, commenting at the July 28, 2025, status hearing, that "I intend, and I've intended throughout, to enter prospective

---

2   The Court later expressed reservation about whether it could address its perceived LGBTQ issue. *See* June 16 Hr'g Tr. 84.

2

injunction against the public officials from prospectively engaging in any such discrimination." July 28 Hr'g Tr. 27-28.

## ARGUMENT

The Court has no jurisdiction to enter an injunction based upon a claim of discrimination. Limited jurisdiction is the *sine qua non* of the federal judiciary. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities. And federal courts do not issue advisory opinions." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423–24 (2021). Instead, the Court's jurisdiction is defined by the claims the parties actually present, and jurisdiction only exists if those parties have standing to assert the claims. Moreover, fundamental fairness obliges the Court to avoid all suggestion of prejudice, such as by declaring a defendant liable without notice and an opportunity to defend against the allegation.

## I. The Court Lacks Jurisdiction to Raise or Decide Supposed Discrimination *Sua Sponte.*

The principal problem with the Court's plan to announce findings and to issue an injunction on discrimination is that—for multiple reasons—it has no jurisdiction to do so. At this stage of the proceeding, with the Phase 1 final judgment entered and on appeal, the Court has lost whatever jurisdiction it might have over matters pertaining to that judgment. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and *divests* the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982) (emphasis added); *accord United States v. Brooks,* 145 F.3d 446, 456 (1st Cir. 1998) (noting "[t]he black-letter rule that the filing of a notice of appeal transfers authority over the case from the trial court to the court of appeals").

3

Even absent an appeal, "[f]ederal courts are courts of limited jurisdiction" to decide specific cases and controversies brought by plaintiffs with standing to adjudicate them. *Cnty. Court of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 154 (1979). Here, however, no litigant has presented a "case or controversy" over discrimination, so no jurisdiction exists for the Court to render judgment on such an unasserted claim. A case or controversy is defined by the pleadings. As the Supreme Court recently noted, "jurisdiction follows from (and only from) the operative pleading." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025). In that case, the plaintiff amended the complaint after removal to excise federal law claims and leave only state law claims in a bid to defeat federal jurisdiction. *Id.* at 25. The Supreme Court held that the court could not retain jurisdiction by "reviv[ing]" the federal claims on its own initiative. *Id.* at 33. After all, the plaintiff is "the master of the complaint," and "jurisdiction follows from (and only from) the operative pleading." *Id.* at 35. Just as a court cannot revive a claim that a party has asserted and then dropped, neither can it enter judgment on a claim that was never pled.

It also violates "the principle of party presentation" for a court to raise new legal theories that the parties did not present. *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). Courts "do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and . . . decide only questions presented by the parties." *Id.* at 376 (citation modified). In *Sineneng-Smith*, the Supreme Court held that it was an abuse of discretion for a lower court to refashion the case and decide it based on a legal theory the parties did not advance. *Id.* at 375. So too, here, as regards discrimination.

Equally concerning, the Court found Defendants liable for racial and gender discrimination without affording any notice or opportunity to defend against the accusation. Prejudging liability based on an administrative record that was never intended to address discrimination, and which

4

reflects a tiny subset of thousands of grant decisions NIH makes each year, does not comport with fundamental fairness or the Founder's cherished principle of basic due process. Nothing in our Federal Rules of Civil Procedure allows a court to find a party liable before the party is even made aware of the allegation. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.") (citation modified).

## II.     **Any Effort to Address "Discrimination" Now Would Be Untimely.**

It is also too late to inject a new theory of discrimination into this case. The Court issued a final judgment for Phase 1 of this litigation, declaring unlawful the grant terminations and the Challenged Directives under the APA. No party has moved to reopen or seek relief from the judgment under either Rule 59 or Rule 60, respectively. The deadline to move to reopen the judgment under Rule 59 has expired, and Plaintiffs cannot obtain relief under Rule 60 with the judgment on appeal, unless the First Circuit were to remand for that purpose. Any effort to reopen the judgment is not only untimely, but also futile. Plaintiffs cannot meet the standard for reopening a judgment, for Plaintiffs could have alleged discrimination right from the start. Nor can plaintiffs use Phase 2 of this litigation to add a discrimination claim, because the Court's announced discrimination is part and parcel of the same transaction of operative facts as the Phase 1 claims.[3]

---

[3] Furthermore, given partial final judgment on Phase 1 and its appeal, it is too late for any Plaintiff to assert a discrimination claim. Nor can they bypass the final judgment rule and add a "discrimination" claim in Phase 2, because the issue of discrimination, as described by the Court, falls squarely within the scope of the Phase 1 judgment. Plaintiffs also lack standing to pursue a discrimination claim; no evidence exists that any plaintiff here was harmed by the "discrimination" as the Court has described it.

A.    The Judgment Cannot Be Reopened to Add New Claims.

It is well-established that, post-judgment, a complaint cannot be amended unless and until a motion for post-judgment relief is granted. *Fisher v. Kadant, Inc.*, 589 F.3d 505, 509 (1st Cir. 2009) ("If . . . a motion to amend is filed *after* the entry of judgment, the district court lacks authority to consider the motion under Rule 15(a) unless and until the judgment is set aside.") (emphasis added); 6 *Wright & Miller's Federal Practice & Procedure* § 1489 (3d ed. 2025) ("[O]nce a judgment is entered the filing of an amendment cannot be allowed until the judgment is set aside or vacated under Rule 59 or Rule 60."). Here, the Court entered a final judgment regarding Phase 1. States Doc. No. 164; APHA Doc. No. 151. Accordingly, before their complaints could be amended to assert a discrimination claim, Plaintiffs would have had to reopen the judgment under Rule 59 or Rule 60.[4]

The deadline to reopen the judgment under Rule 59 has passed. Rule 59 expressly requires that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). This deadline is short and unyielding, "with no possibility of an extension." *Banister v. Davis*, 590 U.S. 504, 507–08 (2020). The court entered its partial final judgment in both cases on June 23, 2025. States Doc. No. 151; APHA Doc. No. 138. Thus, the deadline to file a Rule 59 motion to alter or amend the judgment expired by July 21, 2025.

The Court cannot grant relief from judgment under Rule 60, either. "Once an appeal has been taken from the judgment, the district court no longer has jurisdiction over the case and cannot

---

[4] Although the Court seemed to invite Plaintiffs to pursue a discrimination claim during the June 16 hearing, no party has taken up the issue. June 16 Hr'g Tr. 83.

6

reopen the judgment to allow an amendment to be made." 6 *Wright & Miller's Federal Practice & Procedure* § 1489 (3d ed. 2025); *see Fontanillas-Lopez v. Morell Bauza Cartagena & Dapena, LLC*, 832 F.3d 50, 62 n.10 (1st Cir. 2016) ("Typically, the filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the trial court of control over those aspects of the case involved in the appeal") (citation omitted). A district court cannot grant a Rule 60 motion while the judgment is on appeal unless "the court of appeals remands for that purpose." Fed. R. Civ. P. 62.1(c).

Plaintiffs could not meet the standard for relief under Rule 60 at any rate. As the Supreme Court has recently explained, a "party seeking to reopen his case and replead must first satisfy Rule 60(b) on its own terms and obtain Rule 60(b) relief before Rule 15(a)'s liberal amendment standard can apply." *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1619 (2025). Under Rule 60(b), a party can obtain relief only for the reasons listed: "mistake or excusable neglect, newly discovered evidence, fraud, or the void or prospectively inequitable status of a judgment." *Id.* (summarizing Rule 60(b)(1)–(5)). None of these grounds applies. Although Rule 60 also has one catchall provision that allows a district court to reopen a case for "any other reason that justifies relief," Rule 60(b)(6), the Supreme Court has repeatedly emphasized that this provision only applies in "extraordinary circumstances" where "the movant is completely without fault for his or her predicament." *BLOM Bank SAL*, 145 S. Ct. at 1620 (quoting 12 *Moore's Federal Practice*. § 60.48[3][b] (3d ed. 2024)).

The rules affording post-judgment relief do not give litigants a second bite at the apple for new theories or arguments that could have been presented earlier. *See Banister v. Davis*, 590 U.S. 504, 508 (2020) ("[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued."); *Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am.,*

7

*LLC*, 794 F.3d 200, 208 (1st Cir. 2015) ("As we have held time and again, however, a Rule 59(e) motion does not provide a vehicle for a party to undo its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment.") (citation modified); *F.D.I.C. v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) (Rule 59(e) motions "may not be used to argue a new legal theory."). Thus, because Plaintiffs could have claimed discrimination but did not do so, no basis exists to reopen the Phase 1 judgment.[5]

B.  Plaintiffs Cannot Add a Discrimination Claim to Phase 2.

Plaintiffs cannot avoid these final judgment rules by characterizing the discrimination claims as part of Phase 2. As part of Phase 1, the Court has already found that the Challenged Directives and grant terminations were unlawful. States Doc. No. 163 at 6–7, APHA Doc. No. 151 at 6–7. That order and decision are now on appeal. Those issues are not part of Phase 2.

In any event, assertion of discrimination claims would have done no more than present another legal theory as to why those Challenged Directives or grant terminations may be unlawful. APHA Doc. No. 151 at 7 n.4 (finding "racial discrimination in selecting grants for termination"); *id.* at 8 n.4 (finding "that the grant terminations here at issue demonstrate an unmistakable pattern of discrimination against women's health issues"). The law does not permit bypassing the finality of the final judgment for Phase 1 if the new claim is part of the same transactional facts as the claims decided in the judgment. *Black Lives Matter D.C. v. Trump*, 720 F. Supp. 3d 1, 8–10 (D.D.C. 2024). Rule 54(b) permits the entry of a partial final judgment "as to one or more . . . claims." The

---

[5] Plaintiffs' silence on the subject even after the Court invited them during the June 16, 2025 hearing to request a hearing on discrimination conclusively demonstrates that no basis exists to reopen the Phase 1 judgment.

rule "does not allow a court to enter a final judgment on anything less than a claim—say, on a particular defense or theory of liability." *Black Lives Matter D.C.*, 720 F. Supp. 3d at 8.

    To determine the scope of claims subject to a partial final judgment, courts borrow the test for claim preclusion. *Attias v. CareFirst, Inc.*, 969 F.3d 412, 417 (D.C. Cir. 2020) (citing *Tolson v. United States*, 732 F.2d 998, 1001 (D.C. Cir. 1984)). Like the D.C. Circuit, the First Circuit applies a "transactional approach," and asks whether the claims "arise out of a common nucleus of operative facts." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998). Here, the alleged discrimination is part of the same transaction as Phase 1, which decided whether the Challenged Directives and grant terminations were unlawful. The alleged discrimination asks whether those same actions were unlawful for another reason. Phase two concerns a different transaction—the alleged delay or failure to consider grant applications. Thus, the issue of discrimination – assuming one exists – is inextricably tied to Phase 1 of this case. Indeed, the Court has stated that it views the discrimination issue as part of Phase 1, and the court found "discrimination" in its written opinion on Phase 1. *See* States Doc. No. 163 at 7–9 n.4; APHA Doc. No. 151 at 7–9 n.4. In footnote four, the Court explained, "[m]ore is required to be done *on Phase One*. In addition to ruling on Constitutional law questions, the Court must address" racial discrimination and gender discrimination. *See* States Doc. No. 163 at 7–9 n.4 (emphasis added). The discrimination claims thus squarely fall within the scope of the final judgment on Phase 1.

### III. <u>Plaintiffs Lack Standing to Assert a Discrimination Claim.</u>

    Plaintiffs in both cases also lack standing to litigate the discrimination claims. The alleged harm in the Court's discrimination finding is the potential negative impact on the health of racial minorities and women. *See* States Doc. No. 163 at 7 n.4; APHA Doc. No. 151 at 7 n.4. Researchers, who are the members of the organizational plaintiffs, do not have standing to assert discrimination

9

claims based on such an alleged harm. Nor do the state plaintiffs have standing to assert claims based on a generalized harm to entire populations.

### A. The Organizational Plaintiffs Lack Standing to Assert a Discrimination Claim.

UAW and APHA lack organizational standing to challenge the grant terminations based on their potential negative impact on the health of minority populations and women. Organizational standing requires a tripartite showing from the organization that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). APHA Plaintiffs fail the first two prongs of this test.

As to the first prong, among other showings, the association's members must demonstrate they suffered "an injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact is a "concrete and particularized harm" that is "actual or imminent." *Conservation Law Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 86 (1st Cir. 2025). "An injury is concrete when it is 'real, and not abstract.'" *Id.* Here, *no* evidence exists that the grant terminations at issue harmed the health of UAW and APHA's members. On the contrary, Plaintiffs' declarations focus almost entirely on the impact of grant cancellations on researchers and students who undertake the research. The harm suffered, as framed by Plaintiffs, is the impact of termination on the researchers' work. *See, e.g.,* APHA Doc. No. 38-33 ¶ 21 (stating the terminations "severely hinder [the researcher's] ability to complete [their] study and develop recommendations based on any findings."); *see also* APHA Doc. No. 38-20 at 7 ¶ 23 (stating termination will hinder ability to "draw conclusions and develop recommendations from this study."). The inability of a researcher to draw conclusions from a study is a qualitatively different concern from the health of minority

populations. These are not concrete and particularized harms necessary to sustain standing on any discrimination.

In any event, APHA and UAW also fail the second prong of the organizational standing inquiry. Assuming any of their members could show that their health was negatively affected, such that they independently could possess standing to sue, preventing that type of harm is not germane to either organization's purpose. The germaneness requirement necessitates a showing "that an organization's litigation goals be pertinent to … the *grounds that bring its membership together*." *Bldg. and Const. Trades Council of Buffalo, N.Y. and Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 148 (2d Cir.) (emphasis added) (citing *Humane Soc. of the U.S. v. Hodel*, 840 F.2d 45, 56 (D.C. Cir. 1988). This requirement exists to guard against a situation where "an organization with a diverse membership could readily produce a sufficient number of members claiming constitutionally cognizable injuries from governmental actions, even if such actions had nothing whatsoever to do with the association's area of competence or reason for existence." *Humane Soc. of the U.S.*, 840 F.2d at 57; *see also Med. Ass'n of Ala. v. Schweiker,* 554 F. Supp. 955, 965 (M.D. Ala. 1983) (stating that germaneness test requires that "the injury to [an association's] members has some reasonable connection with the reason the members joined the organization and with the objectives of the organization") (emphasis added), *aff'd*, 554 F. Supp. 955 (11th Cir. 1983).

UAW cannot make this showing because protecting its members from disparate health impacts that are unrelated to the employment context is untethered from its organizational objectives. In examining the objectives of an organization, courts look to that association's constitution. *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 286 (1986). UAW's constitution makes no mention whatsoever of public health, or of health disparities. To the extent it uses the phrase "health" at all, it does so in the context of

workplace safety conditions, *UAW Const*. Preamble at 4, and employee health plans, *UAW Const*. art. 2 § 1. Indeed, beyond the UAW's constitution itself, UAW's own declaration focuses entirely on the impact of the grant terminations on the employment prospects of UAW's members, *not* any potential downstream health effects on a particular population. APHA Doc. No. 38-25 at 3 ¶ 5-8; *see also* APHA Doc. No. 84 at 19 (motion to dismiss in which the Court highlighted UAW's statement that UAW "exist[s] to represent [its] members' interests in relation to their terms and conditions of employment."). Throughout this case, UAW steadfastly represented that its interests are focused on the employment rights of its members. This interest does not extend to the public health writ large.

APHA cannot demonstrate standing because its members do not join APHA so that the organization will protect their health. They join APHA so that APHA will support them professionally. *See* APHA Doc. No. 38-23 at 1 ¶ 2 (stating that APHA has "more than 23,000 individual public health professional members." Professional associations satisfy the germaneness prong when they represent their members *in their capacity as professionals. E.g.*, *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 282-284 (3d Cir. 2002) (no dispute medical professional society satisfied germaneness prong where it alleged certain defendants unfairly profited "at the expense of the psychiatrists and their patients."), *cert denied*, 537 U.S. 881 (2002); *Am. Nurses Ass'n v. Leavitt*, 593 F. Supp. 2d 126, 134 n.6 (D.D.C. 2009) (identifying the purpose of the American Nurses Association as "represent[ing] the interests of registered nurses") (emphasis added); *Am. Med. Ass'n v. United HealthCare Corp.*, No. 00 Civ. 2800(LMM), 2007 WL 1771498, at *21 (S.D.N.Y. June 18, 2007) (holding many medical care providers join the American Medical Association due to their relationship with insurers and compensation). APHA, as a professional association, does not exist to defend the health of its individual members. *See*

12

*Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*, 123 F.4th 1, 18 (1st Cir. 2024) (emphasizing that an association's interest in protecting a habitat did not necessarily extend to protecting any one of its members' observational interests in that habitat), *cert denied,* 2025 WL 1287066 (2025). Put another way, some of Plaintiffs' members may have standing to sue for negative health outcomes based on discrimination as suggested by the Court. But these individual negative health outcomes, necessary for any one member to sue, are not the type of harm APHA's members join to prevent. This disconnect is fatal to APHA's associational standing.

B.  <u>The State Plaintiffs Lack Standing to Assert a Discrimination Claim.</u>

The State Plaintiffs lack standing as well. States have "no equal protection rights of [their] own, and [they] cannot assert equal protection claims on behalf of [their] citizens because a State does not have standing as *parens patriae* to bring an action against the Federal Government." *Haaland v. Brackeen*, 599 U.S. 255, 295 (2023) (citation modified). This "settled rule," *id.*, deprives the State Plaintiffs of standing to pursue a racial discrimination claim grounded in the Equal Protection Clause. And, since "[t]here is no reason to treat *parens patriae* actions alleging constitutional claims against the federal government differently from those alleging federal statutory claims," *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 183 (D.C. Cir. 2019), the State Plaintiffs similarly lack standing to pursue any statutory gender discrimination claims against NIH.

## CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction to adjudicate any discrimination issue and should refrain from issuing any injunction or other order on Defendants premised upon perceived discrimination.

Dated: August 15, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

LEAH B. FOLEY
United States Attorney

KIRK T. MANHARDT
Director

MICHAEL J. QUINN
Senior Litigation Counsel

THOMAS W. PORTS, Jr.
Trial Attorney

SAMUEL HOBBS
Trial Attorney

/s/ Anuj K. Khetarpal
ANUJ K. KHETARPAL
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3658
Anuj.Khetarpal@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: August 15, 2025

*/s/Anuj K. Khetarpal*
Anuj K. Khetarpal

.